418 A.2d 1370

**Sheryl B. BANKS, Appellant,**

v.

**David BANKS.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed Feb. 1, 1980.

442

Warren L. Soffian, Philadelphia, for appellant.

Samuel Brenner, Philadelphia, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal by the mother from an order reducing the father's support obligation for the parties' minor daughter.

On April 13, 1977, the father, David Banks, was ordered to pay $125 a week, plus Blue Cross and Blue Shield, to support the parties' daughter, Amy, who was born in March 1969.

The order was entered by stipulation and was based on the father's then estimated annual income of $15,000. In October 1977, the father decided on his own to reduce his payment to $75 a week, and to stop paying Blue Cross and Blue Shield. On November 15, 1977, the father and mother, Sheryl Banks, were divorced. On December 6, 1977, the father filed a petition to reduce support, and on January 27, 1978, the mother filed a petition to increase support. On February 5, 1979, following a hearing, the lower court granted the father's petition, and reduced support from $125 plus Blue Cross and Blue Shield to $75 a week, and denied the mother's petition to increase support.[1]

1

The mother first argues that "as a matter of law" the lower court should not have heard the father's petition to reduce support because on December 13, 1978, when the petition was heard, the father was in arrears on the payments required by the support order of April 13, 1977, apparently in an amount in excess of $3000.[2]

It is true that where a party flagrantly disobeys a support order, his petition to reduce may be denied. *Goodwin v. Goodwin*, 413 Pa. 551, 198 A.2d 503 (1964); *Beemer v. Beemer*, 200 Pa.Super. 103, 107–108, 188 A.2d 475, 477 (1962). As stated in *Goodwin* (quoting the lower court's opinion there):

> "If a party does 'not deem it appropriate' to obey the Orders of the Court, the Court should not deem it appropriate to grant such party relief it seeks."

413 Pa. at 554–55, 198 A.2d at 504.

1. Meanwhile the mother had filed a petition asking that the father be held in contempt and that arrearages be reduced to judgment. The lower court, however, deferred its decision on this petition. In its opinion, which was filed under Pa.R.A.P. 1925, the lower court states that the petition has been disposed of by agreement of the parties.

2. The court stated the arrearages as $3,325, and asked whether the amount was correct, to which counsel for the father responded, "I have no idea." N.T. 5.

However, the issue is not, as the mother argues, "a matter of law" but rather a question of fact, *i. e.*, in fact, was the party in question guilty of flagrant disobedience?

Here, whether the father's act of reducing support payments from $125 to $75 a week constituted flagrant disobedience was at least initially for the lower court to decide. Where the lower court does not make a determination that a party is in contempt for being in arrears,[3] we have hesitated to find contempt on appeal. *Commonwealth ex rel. Hall v. Hall*, 243 Pa.Super. 162, 364 A.2d 500, *remanded*, 259 Pa.Super. 214, 216, 393 A.2d 794, 795 (1978). The mere existence of arrearages does not preclude a hearing on a petition to reduce. *Commonwealth ex rel. Fusco v. Fusco*, 247 Pa.Super. 413, 372 A.2d 893 (1977). In *Fusco*, the lower court refused to grant a hearing because the petitioner was in arrears. We reversed and remanded for hearing, since so far as we could tell from the record, the petitioner had made a good faith effort to comply with the original support order, nevertheless falling in arrears because of his "precarious financial situation." 247 Pa.Super. at 417, 372 A.2d at 895. *And see Rickert v. Rickert*, 223 Pa.Super. 1, 4, 296 A.2d 841, 842 (1972).

Implicit in the lower court's decision granting the father's petition to reduce is a finding that the father had made a good faith effort to comply with the original order. Thus the court said in the memorandum accompanying its order that the father had suffered a "steady decline in annual earnings from approximately $17,000 in 1977 to approximately $10,000 in 1978 . . . ." Also, the father did make the payments as originally ordered from April 13, 1977, until October 1977. On such a record we are unwilling to hold that the lower court should have found the father guilty of flagrant disobedience and have refused to hear his petition to reduce support.

**3.** As noted, footnote 1, *supra*, the lower court deferred its decision on the mother's petition that the father be held in contempt. The court gave as its reason that "at the next listing . . . we will have the adjusted amount of arrearages as calculated." Page 2 of Memorandum-Order of February 5, 1979.

2

The mother next argues that the lower court abused its discretion in granting the father's petition to reduce support.

■ As a general proposition, it may be said that the role of an appellate court in support proceedings is narrowly circumscribed; absent a clear abuse of discretion, it will defer to the order of the lower court. *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 303, 310 A.2d 672, 673 (1973); *Weiser v. Weiser*, 238 Pa.Super. 488, 362 A.2d 287 (1976). This circumscribed role exists because the appellate court must base its decision on a printed record, whereas the hearing judge has seen and heard the witnesses, and so has the better opportunity to evaluate the issues on their merits. *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa.Super. 66, 67, 297 A.2d 158, 159 (*allocatur refused* 223 Pa.Super. xxxv) (1972). These considerations, however, do not imply that the appellate court is to accept without question the findings and conclusions of the lower court. To the contrary, the appellate court should ensure that the lower court follows proper procedures, and applies the relevant legal principles. *Weiser v. Weiser, supra*, 238 Pa.Super. at 498, 362 A.2d at 291 (concurring and dissenting opinion), *citing Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1933). In addition, the appellate court should scrutinize the record to ascertain whether the record supports the reasoning of the lower court; without such scrutiny, the appellate court cannot fulfill its responsibility of determining whether the lower court has abused its discretion, that is, whether it has "misapplie[d] the law" or reached a "manifestly unreasonable, biased, or prejudicial result." *Girard Trust Bank v. Remick*, 215 Pa.Super. 375, 377, 258 A.2d 882, 884 (1969).

■ Here, the record discloses that the lower court misapplied the law. In its opinion the court states:

Attempts were made [by the mother] to dispute the father's stated income by showing that he made periodic bank deposits in excess of his income and that, if true, his

expenses amounted to more than his income. However, we found this to be unsuccessful and there was an absence of convincing evidence or proof that the father's income was other than what he stated it to be.

At 2.

Thus the court placed on the mother the burden of disproving the father's evidence—and of doing so by offering "convincing evidence." However, the mother had no such burden, or indeed any burden at all. The father was petitioning for a reduction of the amount of support that he was required to pay by the terms of the April 13, 1977, order. While it is true that orders for child support are not final and may be decreased or increased by the court, *Commonwealth ex rel. Kaplan v. Kaplan,* 219 Pa.Super. 163, 280 A.2d 456 (1971); *Commonwealth ex rel. Barnes v. Barnes,* 151 Pa.Super. 202, 30 A.2d 437 (1943), the court may not order a reduction unless the petitioner has proved by competent evidence a material and substantial change in his financial circumstances. *Shuster v. Shuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974); *Commonwealth ex rel. Delbaugh v. Delbaugh,* 258 Pa.Super. 127, 392 A.2d 717 (1978).

■ It cannot be maintained that the father met this burden of proof. Briefly stated, his testimony was: that from October 1977 through November 1978 his earnings as an industrial lighting salesman had decreased from $17,000 to $10,185; that this occurred because the company he represented had "a lack of leads" (N.T. 16), and on his next job, he earned less commission; (N.T. 24–25) and that his expenses during this period increased.[4] However, cross-examination disclosed the following:

**4.** On this point, the mother asserted that the father failed to comply with the best evidence rule in that he offered handmade exhibits outlining his income and expenses rather than documents such as wage statements or tax returns.

The best evidence rule may be stated as follows:

In proving the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent.

1) The father's actual earnings had increased from $15,000 at the time of the original support order, to approximately $16,304.50 at the time of his petition for reduction: $11,005.91 from one company plus $1,298.59 from a second company, plus "$4,000, give or take" from a third company. (N.T. 31–32)

2) His general expenses, other than cost of living expense increases, have remained about the same. (N.T. 33–34)

3) Since the date of the original support order, he had reduced his expenses by completing car payments of $131 a month in June 1978. (N.T. 34)

4) For the year 1977, or 1976, he had invested $8,800 in a Self-Employed Persons Retirement Plan (Keogh Plan). (N.T. 37–39)

5) He rented living quarters in a residence in Margate, New Jersey, for the entire summer of 1977. (N.T. 44–45)

6) He took a vacation of about four days in Nassau during the Thanksgiving holiday of 1977. (N.T. 45–46)

7) He took another four-day trip to Freeport in December 1977. (N.T. 48–50)

8) From October 31, 1977, to December 15, 1977, his earnings, he said, were $1298.59, and yet during that period he deposited $2,728 in his checking account. (N.T. 63–68)

9) From January 1, 1978, through March 15, 1978 his reported earnings, he said, were $940.12, and yet during that period he deposited $2,304.72 in his checking account. (N.T. 70)

> McCormick, Evidence 230 (2d ed. 1972). *And see Warren v. Mosites Const. Co.*, 253 Pa.Super. 395, 401, 385 A.2d 397, 400 (1978).
>
> Here, the father's income and expenses were at issue, not the terms of a writing. The father *could* prove income and expenses by offering such writings as wage statements and tax bills, but he was not restricted to that method of proof. He could also, as he did, state from memory what his income and expenses were, offering his exhibits as a summary of what he remembered. To be sure, documentary proof may well be far more persuasive than the testimonial proof. However, "best," in "best evidence rule," does not mean "most persuasive." Whether the father's undocumented, testimonial, proof was persuasive is discussed later in this opinion.

10) From March 15, 1978, through August 5, 1978, his earnings, he said, were $3,287.64, and yet during that period he deposited $6,265.15 in his checking account. (N.T. 95)

11) From October 1977 through October 1978, he deposited $16,073.37 in his checking account. (N.T. 94)

The father was asked on cross–examination to explain the apparent discrepancy between these deposits and expenditures and his claim of reduced income, but his response was in such general terms that we admit our inability to understand it. He indicated that the deposit in his Keogh Plan account was "a rollover" (N.T. 43), the funds for which came from other accounts (N.T. 42), and he referred on several occasions to having borrowed (or having "probably borrowed" money, or to taking money "from the other additional monies I had in my house" (N.T. 53, 63, 96). However, he offered in evidence no IRS forms, or income tax returns, or commission statements from the companies he represented, or any accountant's report, or any comparable documentation, such as might enable one to understand his financial position. His only exhibits were a statement of income (Exh. P–1) and an itemization of his daily and annual expenditures (Exh. P–2), compiled from check stubs procured by prior discovery.

Nor are we assisted in understanding the father's financial position by the opinion of the lower court. The court only states:

Although his [the father's] method of accounting might be considered unusual and suspect there was no evidence or proof of fraud or undisclosed income. We believed the father's explanation of his accounting method and that any discrepancy in his account was made up by savings and money borrowed from friends and family. His father testified to corroborate this fact. We also recognize that the estimated expenses of both parties are usually inflated and exaggerated, to serve their own interests, and the speculative nature of same.

At 2.

■ This court has noted that in certain occupations, it is difficult to determine a party's actual income. *Commonwealth ex rel. Naselsky v. Naselsky*, 199 Pa.Super. 270, 274, 184 A.2d 288, 289 (1962). Thus where a corporation is run largely by a defendant, his mother and brother, we have held that mere assertions by the defendant and his family (in the form of a corporate resolution) that he had suffered a bonus reduction failed to satisfy the burden of proof required of a party requesting a reduction in support. *Commonwealth ex rel. Kaplan v. Kaplan*, 219 Pa.Super. 163, 280 A.2d 456 (1971). Here, although he is not engaged in a family business, the father has worked on a commission basis for several companies. As in a family business case, careful scrutiny is required in evaluating his allegations of reduced income. The lower court's opinion does not indicate any such scrutiny but instead appears to be based upon its acceptance of the father's self-serving testimony and exhibits.

■ In weighing the evidence, the lower court should have evaluated, and should have discussed in its opinion, the points made on cross-examination. Also, it should have looked beyond the actual earnings to which the father testified, to the nature and extent of his property and investments, and his standard of living. *Weiser v. Weiser, supra; Shuster v. Shuster, supra.* It has been held that the net income of a father, even as shown on income tax returns, is not to be accepted in a support case as the infallible test of his earning capacity, especially when the father is in business for himself and is allowed substantial business expenses, which elevate his standard of living. *Commonwealth v. Miller*, 202 Pa.Super. 573, 577, 198 A.2d 373, 375 (1964). In *Shuster v. Shuster, supra,* this court reversed an order reducing a prior support order when the evidence revealed that in spite of the husband's claims of reduced income, his investments had increased, he continued to own substantial real estate and jewelry, and had managed to spend substantial sums of money on various trips to Canada, Israel, Italy, and the Caribbean. We found that

even though his tax returns reflected a decrease in net income from approximately $30,000 to $15,000, the extent of his total financial worth had actually improved rather than diminished. 226 Pa.Super. at 547–48, 323 A.2d at 763. The same conclusion would appear warranted in the present case. Even though the income statement presented by the father reflects a reduction in income from approximately $17,000 to $10,000, the evidence of disproportionately higher bank deposits, his investment in the Keogh retirement plan, his renting of a summer residence, and his vacations in Nassau and Freeport, all combine to suggest an increased standard of living rather than the 40% reduction of annual earned income he alleged.

■ Accordingly, we conclude that in granting the father's petition to reduce, the lower court committed a clear abuse of discretion: it misapplied the law, by placing the burden of proof on the mother; and so far as we can determine, the evidence does not support its order. We are nevertheless unwilling to enter an order fixing the amount of support that the father should pay. The record is so confusing and incomplete that for all we know, his earnings really did decrease. We shall therefore remand for further hearing in the expectation that at that hearing the father's petition will be reconsidered in light of the principles that have been discussed, and in the further expectation that if another appeal is taken, we shall have the benefit of an opinion in which the lower court evaluates such conflicts as the evidence may present, and explains how it reached its conclusion.

–3–

The mother finally argues that the lower court abused its discretion in denying her petition to increase support. We have concluded that it is better not to rule on this argument at this time. Instead, we shall remand the entire case, so that when the lower court reconsiders the father's petition

to reduce support, it may also reconsider the mother's petition to increase support.

So ordered.

CAVANAUGH, J., files a concurring and dissenting opinion.

CAVANAUGH, Judge, concurring and dissenting:

I concur with part one of Judge Spaeth's opinion which found that the Court below properly heard appellee's petition to reduce support.

I dissent from part two of the opinion and the order of remand directing the court below to reconsider appellant's petition to increase support and appellee's petition to reduce support.

The court below found, after a lengthy hearing covering approximately 150 pages of testimony, that the appellee's income had been reduced from $15,000 per year in 1977 to $10,000 per year in 1978. The court below reduced an order of support in the amount of $125.00 per week for support of one child to $75.00 per week. The evidence established that appellee worked as a salesman of industrial lighting on a commission basis. At the hearing, he produced a financial breakdown which purportedly showed his income from various employers during 1978. The appellee had no other income during the period in question except his earned income. The only major asset which the appellee owned was the house in which he lived which had a market value of about $30,000 against which there were a mortgage and a note totalling about $26,000. Appellee purchased his wife's interest in the house and in order to do this he borrowed $15,500 from his father which obligation was represented by a recorded note.

Appellee testified at length concerning his changed circumstances which basically consisted of a reduction in his earnings. He introduced into evidence a breakdown showing the various employers for whom he worked in 1978 and the amount that each employer paid him. Since business

was not as good as it had been in previous years his income decreased. While appellee did not introduce copies of his federal or state income tax returns, W2 Forms, or 1099 Forms for the year 1978, he was not required to do so. As the majority notes on page 1374, footnote 4: "He could also, *as he did*, state from memory what his income and expenses were, offering his exhibits as a summary of what he remembered." (emphasis added). Yet the majority states at page 1375 ". . . [C]areful scrutiny is required in evaluating his allegations of reduced income. The lower court's opinion does not indicate any such scrutiny but instead appears to be based upon its acceptance of the father's self–serving testimony and exhibits." The court below found appellee to be credible and based its decision on his testimony and exhibits as he was the principal witness in support of the petition to reduce the order. To characterize his testimony as "self–serving" and therefore somehow suspect, is in the context of this case, not appropriate.

The majority opinion cites *Commonwealth v. Miller*, 202 Pa.Super. 573, 577, 198 A.2d 373, 375 (1964) as standing for the proposition that the net income of the father is not an infallible test for earning capacity. This is especially true when the father is in business for himself and is allowed "substantial business 'expenses', items of depreciation and sundry other deductions which enable him to live luxuriously before spending his taxable income." 202 Pa.Super. at 577, 198 A.2d at 375. We do not disagree with the majority's analysis of the *Miller* case. However, it is not applicable to the facts of the case before us. In the instant case the appellee was not in business for himself and was only a commission salesman. There was no evidence that he was allowed substantial business expenses or "sundry other deductions" which enabled him to live luxuriously.

The majority also cited *Shuster v. Shuster*, 226 Pa.Super. 542, 323 A.2d 760 (1974) which reversed an order reducing support where the husband's investments had increased, he continued to own substantial real estate and jewelry and spent substantial sums of money on trips to Canada, Israel,

Italy and the Caribbean. In the *Shuster* case, *supra*, there was evidence that the husband's net holdings in securities had increased from $350,000 in June 1970 to $471,000 in May 1971 and that in addition he owned some nineteen pieces of real estate and jewelry worth approximately $30,000. The facts of the *Shuster* case, *supra*, are strikingly different from the facts before us.

The majority opinion notes that the appellee transferred about $8,800 in a Keogh plan during the year 1978. Appellee explained this by saying that it was a "rollover" from one account to another. A "rollover" generally signifies a transfer from one retirement plan to another and does not represent an increase in assets. The majority opinion also notes that appellee took two four day trips out of the country during the period in question and appellee testified that each of these trips costs about $200 to $300. Appellee also rented a room in a house in Margate, New Jersey for two months in the summer for a total rent of $355. These points were raised on cross–examination and the majority has determined that the court below erred in not discussing in its opinion the points raised on cross–examination. Page 1375.

A finding of an abuse of discretion is not lightly made and is determined only upon the showing of clear and convincing evidence that would require reversal of the lower court. *Com. ex rel. Halderman v. Halderman*, 230 Pa.Super. 125, 127, 326 A.2d 908, 910 (1974). I have carefully reviewed the record in this case and respectfully disagree with the majority's finding that the court below has clearly abused its discretion in finding the husband's testimony to be credible and reducing the order of support from $125 to $75 per week. The court in its opinion analyzed the evidence and the fact that it did not discuss in detail all of the matters raised on cross–examination does not, in my opinion, justify a remand of the case for a rehearing. The opinion of a hearing court cannot reasonably be expected to cover every aspect of the testimony on direct and cross–examination in an attempt to satisfy an appellate court that nothing escaped its attention.

Toward the beginning of the hearing before Judge Canuso counsel for appellant moved for summary judgment which motion was denied by the hearing court. The court stated (notes of testimony, page 26): ". . . I want to hear as much as I can, and if you don't ask I will find out myself before I decide the case. So actually what I am saying is lets get all the information and testimony that we can on which I can base a judgment." The petition to decrease the order of support was heard at length and the opinion of the hearing judge indicates that he carefully considered the evidence prior to entry of his order.

I would affirm the order of the court below.