435 A.2d 879

**Carol DUNBAR, Appellant,**

**v.**

**James C. DUNBAR, Jr.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Oct. 9, 1981.

Theodore F. Huckestein, Jr., Pittsburgh, for appellant.
John L. Bailey, Pittsburgh, for appellee.

Before CAVANAUGH and HOFFMAN, JJ.

CAVANAUGH, Judge:

The dispute in this case involves the amount of child support the father-appellee should be required to pay. The parties were divorced in 1975 and the father was subsequently ordered to pay $400.00 per month for support of his three children. The lower court was presented with a petition to increase support and for attachment for noncompliance by the mother, and a petition to decrease the support order and strike the arrears by the father. The lower court decreased the monthly award to $200.00; ordered a wage attachment for that amount; and modified the previous order to allow for the payment of arrears, which had been reduced to judgment, in monthly installments of $40.00. Mrs. Dunbar appeals. We reverse and remand.

Mr. Dunbar made the required support payments until September, 1976. At that time he sought relief from the order from the Administrative Judge of the Family Division in Allegheny County due to the fact that a creditor had attached his bank accounts. In the ensuing two years four

hearings before three different judges were held as a result of the father's failure to comply with the support order. (Mr. Dunbar is a real estate developer who met with serious business reversals, as will be demonstrated in greater detail below).

The first hearing was held before Judge Zeleznik on January 24, 1977, under Mrs. Dunbar's rule to enforce the support order. After a hearing the court continued the case for approximately forty-five days. The court noted in its order that Mr. Dunbar's bank accounts had been garnished. On June 13, 1977, the parties again appeared before Judge Zeleznik to consider Mr. Dunbar's Rule to suspend the arrears and cancel the support order, and Mrs. Dunbar's petition to reduce the arrears to judgment. On September 22, 1977, the court ordered that the record arrears of $4,100.00 be reduced to judgment, that the Rule to suspend arrears and cancel the support order be discharged and that the existing support order remain in full force and effect.

The third hearing was held to consider Mrs. Dunbar's petition for contempt. The court, by Judge Bigley, made the rule for contempt absolute and ordered Mr. Dunbar incarcerated unless he paid the record arrears of $2,800.00 within thirty days. The final contempt hearing was continued for three weeks so that Mr. Dunbar could make a three week trip to Europe. The postponement was allowed because Mr. Dunbar's father tendered a $500.00 support payment on his son's behalf. Mr. Dunbar was subsequently sentenced to sixty days in the Allegheny County jail, but was released early due to good behavior and for health reasons. Following his release, the support order was reinstated in all respects and Mr. Dunbar was ordered to pay the sum of $2,800.00 to Mrs. Dunbar within sixty days. The court noted that funds from a certain bank account had become available to the father from which he could make the support payments.

The fourth hearing was held on October 5, 1978, before Judge Kaplan. Stating that changed circumstances now render the father incapable of paying the prior support

order, the lower court reduced the award by fifty per cent and modified the previous order to pay arrears in a lump sum to allow for monthly installment payments. The appellant-mother argues that the support order should have been increased rather than decreased because of appellee's improved circumstances since the prior hearing.

The scope of review in a support case is a narrow one. Absent a clear abuse of discretion, the appellate court will defer to the order of the lower court. *Banks v. Banks,* 275 Pa.Super. 439, 418 A.2d 1370 (1980); *Weiser v. Weiser,* 238 Pa.Super. 488, 362 A.2d 287 (1976); *Comm. ex rel. Hauptfuhrer v. Hauptfuhrer,* 226 Pa.Super. 301, 310 A.2d 672 (1973). The hearing judge has seen and heard the witnesses, and so has the better opportunity to evaluate the issues on their merits. *Banks v. Banks, supra,* 275 Pa.Super. at 445, 418 A.2d at 1373; *Com. ex rel. Friedman v. Friedman,* 223 Pa.Super. 66, 67, 297 A.2d 158, 159 (1972). Orders of support are not final and may be increased or decreased where the financial conditions of the parties change. *Banks v. Banks, supra; Com. ex rel. Fusco v. Fusco,* 247 Pa.Super. 413, 372 A.2d 893 (1977). However, a party seeking to modify a support order has the burden of proving by competent evidence the existence of materially and substantially changed circumstances since the entry of a prior order. *Com. ex rel. Delbaugh v. Delbaugh,* 258 Pa.Super. 127, 392 A.2d 717 (1978); *Com. ex rel. Hall v. Hall,* 243 Pa.Super. 162, 364 A.2d 500, remanded, 259 Pa.Super. 214, 393 A.2d 794 (1978). Thus a petition to modify an order of support is not a substitute for an appeal and cannot bring up for review matters adjudicated in making the prior order. *Com. ex rel. Eppolito v. Eppolito,* 245 Pa.Super. 93, 369 A.2d 309 (1976); *Com. ex rel. Long v. Long,* 181 Pa.Super. 41, 121 A.2d 888 (1956).

Although the lower court held that the reduction of the award from four hundred to two hundred dollars was justified by changed circumstances, our own review of the record brings us to a contrary conclusion. Mr. Dunbar, as a real estate developer, has met with serious business rever-

sals. At one time he was quite successful, but at the time of the hearing before Judge Kaplan he was working as a maintenance man for a company owned by his brother in apartment complexes owned by his father. Mr. Dunbar formerly owned a twenty-eight per cent interest in one of the buildings that he now works in as a maintenance man.

A review of the record reveals, however, that these business reversals had been in existence at the time of the prior orders in this matter, and that the appellee's financial picture had, in fact, improved since the previous order. In July, 1977, Union National Bank filed judgment and attached the father's bank account so that appellee had no more funds. A partition judgment and an arrearages judgment existed and remained unpaid at the time of the April 28, 1978, hearing preceding the May 1, 1978, order. A nine thousand dollar annual stipend given to appellee by his father commencing in the fall of 1976 was discontinued in December, 1977. The last building project attempted by the appellee as a developer was the Cochran Hall Condominium. The lender for this was Mellon Bank, which foreclosed on the loan in April, 1977. Thus all of Mr. Dunbar's business reversals, liens, judgments and attachments existed prior to the May 1, 1978 order.

Moreover, the appellee's financial situation was actually better at the time of the order appealed from instantly than at the time of the previous orders which had upheld the amount of the order and which refused to remit the record arrearages on that obligation. At the time of the hearing below the appellee's liens and judgments had been satisfied. With the exception of the $2,800.00 in outstanding support arrearages, his statement sheet would have read "zero assets and zero liabilities." Counsel for the father conceded that, "this management job that he has is really more income than he's had in three or four years…so actually, this will be the first time in years that he's had a W–2." Therefore, we hold that the lower court erred in reducing the award due to the absence of materially and substantially changed circumstances.

Mrs. Dunbar argues that materially and substantially changed circumstances exist so as to justify an increase in the support order. She claims that her expenses for raising three children have increased substantially and that most of the burden for support has been assumed by her retired father.

The lower court failed to consider Mrs. Dunbar's claim of changed circumstances. Therefore, we remand the case for a consideration of this question. If the lower court determines that changed circumstances warrant an increase in the support order, in fixing an award of support, it should be guided by certain well-established principles: Because the purpose of an order of support is the welfare of the children and not the punishment of the parent, the award must be fair and not confiscatory. It is intended to provide such allowance for support as is reasonable, considering the property, income and earning capacity of the father and the condition and station in life of the family. *See Dugery v. Dugery*, 276 Pa.Super. 51, 419 A.2d 90 (1980); *Com. ex rel. Warner v. Warner*, 194 Pa.Super. 496, 168 A.2d 755 (1961).

The earning capacity of the appellee should be closely examined. Although a once successful real estate developer and a licensed real estate broker, he is employed as a maintenance man. The lower court stated that the appellee, "partially handicapped by the same physical problem that contributed to his early release from jail [diabetes] has endeavored to restore his physical, financial and emotional stability by taking the only job offered him by the family enterprise." There is no testimony on record to the fact that appellee's diabetes in any way hinders his ability to find other employment. Also accepting the "only job offered by the family enterprise" has no bearing on his ability or capacity to find work at a salary commensurate with his experience and the needs of his family.

This is especially true here where the appellee's father "supports" the appellee so that he can afford to take a job earning a meager salary of $400.00 per month and thereby avoid paying support payments. Thus Mr. Dunbar, a main-

tenance man despite his other credentials, maintains a membership in an exclusive country club and private social club; can make trips to distant cities to attend football games; lives in an apartment rent-free with all utilities, including phone, and expenses paid. All of these are provided by his father. He has the use of two automobiles with insurance paid; free office facilities; and is able to pay thirty-nine dollars a month to store an airplane that he owns.

Mr. Dunbar's brother, by whom Dunbar is employed, testified that he also employs real estate sales agents. The vast majority of these agents make well in excess of the appellee's salary. The record indicates that Mr. Dunbar's father harbors an animosity towards Mrs. Dunbar which has developed into an estrangement from the grandchildren. The grandfather has disinherited his son's children and at one point threatened to terminate his son's stipend of $9,000 a year if any of it went to Mrs. Dunbar for child support. Mr. Dunbar described his father's attitude: "He is upset. Not with the grandchildren, he don't [sic] have any compulsion that way. He just doesn't want her to get her hands on any money."

In its opinion the lower court makes much of the grandfather's unwillingness to make support payments or to otherwise bail his son out of his financial woes. However, the grandfather's lack of contribution cannot serve as an excuse for appellee's persistent refusal to abide by court orders. It is the father's duty to support and not the grandfather's, which is well-nigh absolute, *Com. ex rel. Mickey v. Mickey*, 220 Pa.Super. 39, 280 A.2d 417 (1971); *Com. ex rel. Snively v. Snively*, 206 Pa.Super. 278, 212 A.2d 905 (1965).

The appellant also argues that the lower court abused its discretion by permitting the appellee to pay arrearages in monthly installments rather than in a lump sum. The payment of the $2,800.00 arrearages had been the subject of several orders prior to that of Judge Kaplan. By Judge Zeleznik's order of September 22, 1977, arrearages in the

amount of $4,100.00 had been reduced to judgment. On May 1, 1977, the appellee was held in contempt for failing to pay $2,800.00 outstanding in arrearages. Appellee failed to purge himself of the contempt and was jailed. Upon his release he was again ordered to pay $2,800.00 within sixty days. The order dated August 11, 1978, stated that the funds at Mount Lebanon Savings and Loan were then available to appellee for the purpose of paying child support. That same day Mr. Dunbar withdrew eight thousand dollars from Mount Lebanon Savings and Loan and gave it to his brother for payment of expenses the brother had allegedly incurred on appellee's behalf. Dunbar fails to state what these expenses were or to what amount he was indebted to his brother. Thus, despite these court orders, the $2,800.00 in arrears remained unpaid at the time of the hearing before Judge Kaplan. Judge Kaplan ordered the arrearages to be paid in monthly installments of forty dollars.

In its opinion the lower court holds that the appellee is entitled to this relief from the lump sum payment due to changed circumstances. However, we have found no changed circumstances warranting a reduction in the order of support. Therefore, in view of the absence of changed circumstances and the contemptuous and flagrant disobedience of prior court orders, the lower court abused its discretion in thus relieving the appellee of his accumulated arrearages by permitting him to pay the lump sum over what will amount to be a period of almost six years. While it is true that a court may in appropriate circumstances grant the parent relief in the form of a temporary order reducing the periodic sums payable, an order suspending temporarily the payment of any sums, or any order remitting arrearages, 42 Pa. C.S.A. § 6710; *Com. ex rel. Caswell v. Caswell*, 280 Pa.Super. 359, 367 n.3, 421 A.2d 762, 767 n.3 (1980), the instant case does not provide an appropriate circumstance. *See also Com. ex rel. Caswell v. Caswell, supra* (concurring opinion by Spaeth, J.) (as long as father's earning capacity was unimpaired, he was not entitled to either a temporary reduction in the support order or relief from accumulated arrears).

Order of the lower court reversed and case remanded for proceedings consistent with this opinion.