J-A02020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LINDA MARIE PERRY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| WAYNE J. PERRY | |
| Appellant | No. 363 EDA 2013 |

Appeal from the Order Entered December 28, 2012
In the Court of Common Pleas of Lehigh County
Domestic Relations at No(s): 2009-FC-1619

BEFORE:  FORD ELLIOTT, P.J.E., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                                    **FILED JULY 29, 2014**

Wayne J. Perry (Husband) appeals from the order entered in the Court of Common Pleas of Lehigh County on December 28, 2012,  granting a final decree of divorce and incorporating, but not merging, the terms and conditions of the May 25, 2012 Master's Report and the November 1, 2012 Preliminary Order and Decree.  In this timely appeal, Husband has raised seven claims of trial court error.  Following a thorough review of the certified record, submissions by the parties, and relevant law, we affirm on the basis of the trial court opinion, in part, and remand for clarification, in part.

Although we are relying upon the trial court opinion, we will briefly reiterate the factual history.  The Perrys were married in 1979 and remained

_____

[*] Retired Senior Judge assigned to the Superior Court.

married for approximately 21 years. During their marriage, Linda Marie Perry (Wife) worked full-time for South Whitehall Township while Husband was a self-employed photographer. After separating in April 2000, Husband moved to California where he occasionally obtained part-time work, attended classes to obtain an Associate Degree, and obtained Social Security disability payments. During this time, Wife paid a substantial portion of Husband's living expenses and debt. Husband did not inform Social Security of the money he was receiving from his estranged wife. Almost ten years after the parties separated, Wife filed for divorce. By the time of the hearings, Wife had been providing financial support to Husband in California for almost 13 years.

Multiple hearings were held before the Divorce Master, who entered findings and recommendations. Husband filed exceptions and the trial court determined that the Master's Report and Recommendations was amply supported by the record and was legally proper. Accordingly, the trial court entered the order currently appealed from, granting divorce and incorporating the terms and conditions of the Master's Report and Preliminary Order.

Husband's seven issues on appeal are:

1) The trial court erred in terminating Husband's APL[1] while the divorce was still pending and economic issues remained unresolved.

2) The trial court erred in its determination that the Parties' date of separation was 2000, rather than 2003.

3) The trial court erred in its determination that Husband was not entitled to post-divorce alimony.

4) The trial court erred in the distribution of marital assets, including its determination that Husband should waive his rights to two of Wife's retirement accounts.

5) The trial court erred in failing to award [Husband] the full amount of counsel fees incurred.

6) The trial court erred in failing to provide any type of reimbursement with regard to Wife's receipt of marital pension benefits while the action was pending.

7) The trial court erred in denying Husband a revision to the QDRO[2] in this matter so that Husband's portion of retirement could be paid to his special needs trust.

Husband's Brief at i-ii.

Our scope and standard of review are well settled:

Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and this court will not reverse, nor interfere with the determination of the trial court unless there has been a clear abuse of discretion. **Ruth v. Ruth**, 316 Pa.Super. 282, 462 A.2d 1351 (1983). An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence. As a result, under the abuse of discretion standard, we do not usurp the trial court's duty as fact finder; rather, we carefully scrutinize each of the guidelines to

_____

[1] Alimony *pendente lite*.

[2] Qualified Domestic Relations Order.

determine whether the lower court has abused its discretion. ***Ruth***, *supra*. However, an abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law. ***Banks v. Banks***, 275 Pa.Super. 439, 418 A.2d 1370 (1980).

***Braderman v. Braderman***, 488 A.2d 613, 615-16 (Pa. Super. 1985) (footnote omitted).

Our review of this matter leads us to conclude that Husband is largely seeking to re-litigate an order he does not agree with before our Court. Mindful of our standard of review, we have examined the extensive certified record, including all notes of testimony for the hearings and the exhibits, the Master's Report and Recommendations, the trial court's review in light of the exceptions taken from the Report and Recommendations; as well as relevant law. In doing so, we find no abuse of discretion or errors of law by the trial court regarding issues 1-4, 6, and 7. Accordingly, we affirm the order based upon the sound reasoning of the trial court's Pa.R.A.P. 1925(a) opinion, dated June 12, 2013.[3]

However, regarding issue 5, Husband's claim for attorney's fees, the trial court did not accept the Master's recommendation of no award for fees.

_____

[3] The trial court's reasoning regarding the QDRO and the special needs trust is found in the History section of the trial court opinion rather than the Discussion. In denying the amendment, the trial court noted the late request to amend the QDRO, after Husband improperly delayed execution of the Order, as well as the failure to provide any supporting documentation, evidence or law. We discern no abuse of discretion or error of law therein. We comment on this aspect only because the discussion is located apart from the remaining analysis.

Rather, the trial court awarded Husband $2,000.00 for counsel fees out of the approximately $16,000.00 sought, but provided no reasoning for this award. Therefore, we have no basis upon which we may review the award.[4] Accordingly, we remand this issue to the trial court for issuance of a supplemental Pa.R.A.P. 1925(a) opinion providing explanation/clarification for the award. Trial court is directed to file this supplemental opinion within 30 days of the receipt of the certified record. Thereafter, the certified record is to be returned to this Court forthwith.

Order affirmed in part, remanded in part for action consistent with this decision. Jurisdiction retained.

Judge Strassburger files a concurring and dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2014

---

[4] We do not suggest that the $2,000.00 award was improper. We simply do not have a basis upon which to review the award.

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| LINDA MARIE PERRY, | ) | No. 2009-FC-1619 |
| Plaintiff | ) | |
| vs. | ) | DIVORCE |
| | ) | |
| WAYNE J. PERRY, | ) | |
| Defendant | ) | |

FILED
2013 JUN 13 A 9: 52
CLERK OF COURTS
LEHIGH COUNTY, PA

### Pa. R.A.P. 1925(a) STATEMENT

AND NOW, this _12th_ day of June, 2013, the undersigned enters the following statement

pursuant to Pennsylvania Rules of Appellate Procedure 1925(a):

On December 28, 2012, this Court entered a final decree of divorce, incorporating but not

merging the terms and conditions of the May 25, 2012 Master's Report and the November 1,

2012 Preliminary Order and Decree. An appeal was filed by Defendant, Wayne J. Perry

(Husband) on January 25, 2013, Docket Number 363 EDA 2013. Thereafter, Husband was

directed to file a Concise Statement of Matters Complained of on Appeal and Plaintiff, Linda

Marie Perry (Wife) was directed to respond thereto. Husband timely filed his statement pursuant

to Pa.R.A.P. 1925(b) on February 20, 2013.

Defendant, Wayne J. Perry (Husband), contends that the Court erred in determining the

parties' date of separation to be May 2000, in the distribution of marital assets, in denying

Husband's request that the retirement benefits awarded to him from her defined benefit pension

plan be paid into a special needs trust, in allowing Wife a full credit towards her alimony

obligation for payment of marital credit card debts, in imputing an earning capacity to him, in

terminating his alimony pendente lite, in failing to award all legal fees and costs incurred by him, and in denying him post-divorce alimony.

## HISTORY

The parties married on July 7, 1979. During the course of the marriage, Wife was employed as the finance director of South Whitehall Township and Husband was a self employed photographer. No children were born to the marriage. In April/May 1999, the parties sold their marital home and divided the proceeds equally. They remained separate and apart after April 2000. Wife moved to her newly purchased residence in Lehigh County, while Husband moved to California. Husband never found steady employment, in his field of photography or in any other field. In 2004 he claimed that he was unable to obtain employment due to a double heart bypass that he underwent in 2003 and to his failing health caused by psychiatric and physical problems. With state financial assistance, Husband has since successfully attended college since 2003. His income for approximately the last thirteen years was the support of Wife and government benefits such as Social Security. A divorce complaint was filed by Wife on December 15, 2009, nearly ten years after the parties separated.

The Divorce Master was appointed and hearings were conducted on October 26-27, 2010; Inventories and Appraisement, and Affidavits of Consent were filed by the parties. On May 25, 2012, John E. Roberts, III, Esquire, the Master in Divorce, filed his Report. Exceptions, Answer, and briefs thereto were filed to the Master's Report. After argument, the Exceptions were partially denied on September 26, 2012.

The Master in his Report concluded that the parties finally separated for purposes of divorce on about April 1, 2000, being the last date the parties resided together prior to Husband

2

returning to California. He also found that Wife's ongoing obligation to Husband should be terminated and Wife should receive no further credit for expenses paid directly to or on behalf of Husband. Although a precise figure could not be determined, the Master found that the amount paid by Wife directly to Husband or on his behalf after separation was such that Wife has met her obligation of supporting Husband based upon the length of the parties' marriage and Husband's needs considering his opportunities, capabilities and motivation.

Wife paid thousands of dollars from her income toward Husband's post separation credit card debts. While Husband paid toward these debts, he ultimately discharged the debts through a 2005 bankruptcy. In 2004, Husband applied for Social Security benefits and he received these benefits while Wife was paying his expenses. Husband failed to report his additional income to Social Security. Wife continued to support Husband from 2005 through 2010; she paid Husband $800.00-$900.00 per month and, in addition, she continued to pay the loan taken by her for Husband's 2007 Toyota Scion. Wife's support of Husband continued as such until February 2, 2010, when Husband filed his Answer and Counterclaim to the Divorce and included a count for Alimony Pendente Lite (APL), counsel fees, and permanent alimony. An order for APL in the amount of $1,475.00 per month to husband has been in effect since that date thru August 2013, when this Court terminated the order.

Husband's earning capacity has been an issue throughout this litigation. Husband, resides in California and, in general, has participated in the litigation via telephone; he did appear for the support conference and the divorce hearings. Husband testified of his failing health before each. The record is clear from the Support Hearing Officer's report as well as the Master's Report that the Husband was not found to be credible. Further, the Support Hearing

3

Officer did not find Husband's physician credible, although he did conclude that Husband could not continue as a photographer and assigned Husband an earning capacity based upon California wage guidelines. Exceptions were filed by Husband to this Order. The Court sustained the Exceptions, after argument, awarding husband an earning capacity based upon his Social Security income.

The Divorce Master, in his report, found that Husband minimizes his ability to make it on his own and he found that Husband has been content to utilize his 'unearned' income from Wife to sustain a modest lifestyle 3,000 miles away. Given Husband's abilities and Wife's significant contributions to Husband's living expenses for over a decade following separation, the Master recommended that Wife's obligation would be terminated effective the date of Husband's share of Wife's pension was set aside to him pursuant to an appropriate Order to be drafted on behalf of the parties.

The Master also recommended that Wife receive credit for monies paid on the Scion in return for Husband's waiver of his claims to the marital portion of her South Whitehall Township Thrift Savings Plan and the South Whitehall Township 457 Deferred Compensation Plan. He reasoned that the net amount due to Husband from the rollovers of these accounts would likely be less than the total amount paid by Wife on the car loan considering interest and principal as well as the balance due. Husband received a lump sum payment of $60,000.00, post separation, although marital property, from photography litigation. While the Master found that Husband paid toward the credit card debt, Husband did not account for all of the funds received. The Master generously applied these unaccounted for monies to offset any increase in the aforementioned thrift accounts.

It was further recommended by the Master that Wife's South Whitehall Township Office Personnel Pension was to be divided with Husband receiving fifty percent of the marital portion of the pension through the implementation of a Qualified Domestic Relations Order (QDRO) to be prepared by a third party. The parties agreed to the election of the joint and fifty percent survivor pension option. This pension option, reduced the monthly amount slightly, entitled Husband to his share of the pension in the event Wife predeceases him. The Master also recommended that the divorce decree be withheld until all issues pertaining to Husband's receipt of the pension benefits under the QDRO are resolved, and that Wife's alimony pendent lite obligation under the existing support order should continue until pension payments have been initiated pursuant to the QDRO.

Finally, the Master also recommended that "if Husband appeals these recommendations, additional credits to Wife for potential 'overpayment' of support should be revisited." Husband did just that; he filed Exceptions to the report regarding the date of separation, the denial of post-divorce alimony, his earning capacity, the lack of consideration of Husband's health, equitable distribution, and the denial of counsel fees.

During the pendency of the Exceptions, on July 3, 2012, upon petition of Wife and after hearing, this Court granted Wife's Petition to Terminate Support. The Court found that this was consistent with the well reasoned recommendation of the Divorce Master. Reconsideration was denied on July 23, 2012.

Shortly before the filing of the Master's Report, Wife retired. She received six months of severance pay and medical insurance coverage through October 31, 2012; thereafter, Wife would

5

receive her retirement benefit. This Court, on September 26, 2012, denied Husband's Petition for Special Relief Motion to Reimburse Retirement Benefits and Escrow Future Payments.

In August 2012, Wife had the QDRO prepared pursuant to the Master's Report and provided same to Husband for execution. Husband had failed to pay his portion of the QDRO preparation fees and Wife paid Husband's portion in advance. Ultimately, it was only after an order of Court that Husband executed the QDRO. In the fall of 2012, Husband "started checking into …how this [the divorce] would impact me." He refused to sign the QDRO and in November 2012, he advised Wife that he intended to establish a special needs trust requiring the revision of the QDRO. He proposed this change as he believed that his receipt of income from the pension would preclude him from receipt of medical assistance and other government benefits. He offered that the trust would permit him to receive these government benefits while receiving his portion of the pension benefits. Husband never presented any documentation or credible testimony to corroborate the applicability and validity of this trust. Wife refused to revise the QDRO in that she disagreed that the special needs trust qualified as an alternate payee under a QDRO.

As agreed upon by the parties, this Court entered the Master's Recommended Order on October 31, 2012 as follows: Husband shall retain his 2007 Toyota Scion and Wife shall pay the related loan until paid in full and transfer title to Husband; the parties, having separated on April 1, 2000, shall equally pay to employee a third party to draft a QDRO to divide Wife's South Whitehall Township Office Personnel Pension Plan such that Husband receives fifty percent of the marital portion of the pension benefits applying the coverture fraction to the pension; Wife shall elect the joint and fifty percent survivor pension option, the parties shall also equally divide

6

any reduction or costs based upon the election of the joint and fifty percent survivor pension option; and Wife shall retain as her sole and exclusive property the South Whitehall Township Thrift Savings Plan and her South Whitehall Township 457 Deferred Compensation Plan. It was further ordered that effective with the implementation of the QDRO, Wife's APL obligation shall terminate although she shall continue to pay all arrearages.[1] Husband's claim for post-divorce alimony was denied and Wife was ordered to pay $2,000.00 of Husband's counsel fees.

Months after the QDRO had been established and years after the hearings, Husband, petitioned the Court to revise the QDRO. His Petition for Special Relief was filed only after Wife filed her December 7, 2012 Petition to Enforce the Divorce Master's Recommendations and Order of Court. On December 18, 2012, after a hearing, this Court ordered Husband to sign and execute paperwork related to the implementation of the QDRO. Husband's Petition was denied and found to be a further delay of the divorce decree. The request for a special interest trust is an issue for Husband on appeal. Husband did not raise the issue of this trust before the Divorce Master. Although the Court retains continuing jurisdiction of the determination and disposition of property rights and interests between spouses and other matters pertaining to the marriage and divorce, the Court refused to grant special relief pursuant to Pa.R.C.P. 1920.43, in that it was untimely. Wife was awarded $250.00 attorney's fees recognizing the further delay caused by Husband.

On December 28, 2012, upon consideration of the report and recommendations of the Master in Divorce, this Court entered a Final Decree and Order divorcing the parties from the bonds of matrimony, and incorporating but not merging the terms and conditions of the May 25,

---

[1] This was an oversight by the Court, in that Wife's APL obligation had been previously terminated.

7

2012 Master's Report and the November 1, 2012 Preliminary Order and Decree. On January 3, 2013, the parties filed the QDRO.

## DISCUSSION

The report of the Master is entitled to great consideration in that he has heard and seen the witnesses, and it should not be lightly disregarded. However, in that the report is advisory only, the reviewing Court is not bound by the Hearing Officer's Findings and Conclusions, such that the report does not come to the Court with any preponderate weight or authority which must be overcome. The reviewing Court considers the evidence de novo, its weight, and the credibility of the witnesses.[2] While the Master's conclusions regarding credibility are not binding on the reviewing Court, the determinations of the Master can tip the balance where the record alone does not indicate which party's testimony should be credited.[3] "[I]f the ultimate decision rests on a statement asserted by one party and denied by the other, where there is no corroborative evidence, demeanor on the stand is necessarily dispositive of the issue and is the kind of evidence that cannot effectively be reviewed by an Appellate Court."[4] Therefore, the trial Court is required to make an independent review of the Master's recommendations to determine their appropriateness.[5]

A Trial Court will not set aside a Master's determinations absent an abuse of discretion.[6] This Court found that the Master did not abuse his discretion and had well-founded reasons for his determinations. Deference is given to the Master in that he was able to observe the witnesses and determine their credibility. This Court also gives consideration to the Master's

[2] *Pasternak v. Pasternak*, 204 A.2d 290 (Pa.Super. 1964).
[3] *Mintz v. Mintz*, 392 A.2d 747 (Pa.Super. 1978).
[4] *Gehris v. Gehris*, 334 A.2d 753, 755 (Pa.Super. 1975).
[5] *Kohl v. Kohl*, 564 A.2d 222 (Pa.Super. 1989).
[6] *Childress v. Bogosian*, 12 A.3d 448 (Pa.Super. 2011).

determination of the propriety of the equitable distribution award, looking at the distribution scheme as a whole. This Court agrees and affirms the Master's measure of the circumstances of the case at hand against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

Husband contends that the trial Court erred in its determination that the parties separated as of May 2000. Husband argued this point in his exceptions; he purports that separation occurred in 2003. Wife contends that there was no error. The Master reasonably considered that Husband had moved to California in 1999, had maintained his residence there, and had indicated various dates of separation, all of which were April 2000 or earlier, in a subsequent support filing and an application for financial aid form.[7] Husband's use of the various dates of separation was an indication to the Master that Husband "attempted to manipulate the various 'systems' from which he desired to receive benefits in the form of residency, income, aid or support" (Master's Report, page 9). The Master did not commit an error in his conclusion that the marriage lasted from July 7, 1979, through April 1, 2000, several months less than twenty one years.

Husband maintains that the Trial Court erred to the extent it imputed an earning capacity to Husband where the medical evidence did not support the assessment of an earning capacity. He argues that the Master's report as well as the Trial Court lacked specific findings. He further argues that the Court erred to the extent it relied on the Domestic Relations determination of November 10, 2010 as to Husband's earning capacity, but failed to rely on or acknowledge the Court Order of June 14, 2011, in which Husband's exceptions to the original determination were

---

[7] Plaintiff's Exhibit 1, support filing indicates date of separation as April 1999; Plaintiff's Exhibit 1E Husband made application as' separated' for federal student aid from July 1, 2000 to June 30, 2001 school year; and April 2000 in his application for Special Relief filed February 2010 Lehigh County Domestic Relations.

granted in part. Wife denies that the Court committed error in imputing an earning capacity to Husband.

In November 2010, the Support Master found that Husband had a monthly net income of $1,670.00. After exceptions filed by Husband, his monthly net income was reduced to $845.00 monthly. That Court found that the parties separated in 1999 and reviewed the Support Master's report and agreed that Husband should be assessed with an earning capacity and that there was no error in his determination that the psychiatrist's testimony that Husband could not work did not support a finding that Husband was unable to work. The exceptions were granted only as to the amount of the net monthly income assessed.

Husband was enrolled in college courses from 2004-2010 without charge or at a reduced rate as a California resident. At the time of the hearing at age 57, he had Supplement Security Income and a stipend from California's Vocational Rehab. Husband had no earned income other that as a cook for four months in 2003. While he offered that he was incapable of gainful employment due to coronary artery problems, polycystic kidney disease, anxiety, and depression, Husband was able to drive to, attend and successfully complete his college courses and medical appointments. Husband offered no medical testimony, but rather the testimony of his psychiatrist's opinion that Husband was unable to work because of anxiety and depression.

The Support Master calculated his net income, $1,670.00, based upon his job as a cook. He did not believe that Husband could maintain employment has a photographer. The Court determined Husband's net monthly income based upon what Husband could realistically earn under the circumstances considering his health, age, mental and physical condition, training and

10

time out of the work force.[8] The Court used $845.00 as his net monthly income as it is the amount the he receives in SSI benefits as an accurate reflection of what he could realistically earn if he were to enter the work force. The Master had the benefit of reviewing the complete record of Domestic Relations from the conference, the de novo hearing, to the exceptions before the Court. Moreover, unlike the Court on the exceptions to the support order, the Divorce Master had the opportunity to observe Husband for two days of testimony. The Master did not commit an abuse of discretion or error or law in the extent that the Master imputed an earning capacity to Husband.

Husband states that the Trial Court erred to the extent it allowed Wife a full credit toward her alimony obligation for payment of marital credit card debts, particularly in light of the Master's determination that there was no clear testimony to determine the credits to be provided. He argues that the Master's report is unclear in that it lacks specific findings. Wife denies error by the Court in allowing Wife a full credit towards Wife's alimony obligation for payment of marital credit card debts. Both parties testified at length regarding credit card transactions by Husband after the date of separation. The Master concluded that there was no clear, credible testimony offered by either side as to the precise amount of debts paid, the purposes of the charges, whether balance transfer were in fact payments or simply transfers from Husband's accounts to Wife's accounts, and/or what impact any payments made by either party should have, especially in light of Husband's bankruptcy filing and discharge of his credit card obligations in 2005. During the Hearings (N.T. 178-180), Wife conceded that the marital obligation existing on credit card accounts at the time of separation totaled approximately

---

[8] *Strawn v Strawn*, 664 A.2d 129 (Pa.Super.1995).

11

$15,000.00. The Master concluded that her payment of these marital obligations was subsumed into Husband's waiver of claims to the Wife's South.Whitehall Township 457 Deferred Compensation Plan and Thrift Savings Plan. He took into consideration that Husband's obligations were discharged in his 2005 bankruptcy. These are reliable determinations made by the Master and, again, the Report is entitled to great consideration in that he has heard and seen the witnesses.

Husband also asserts that the Trial Court erred in its distribution of the marital assets, including but not limited to its determination that Husband should waive all rights to Wife's Thrift Savings and deferred compensation plans, both of which are marital assets. Husband argues that although the Master recommended that Wife be given credit for payment of expenses for Husband's vehicle, in the form of a waiver with respect to these plans, these payments were also taken into account as a credit toward Wife's alimony obligation and Wife previously received a credit toward these payments in Husband's alimony pendent lite order. Wife contends that the trial Court did not commit an error in its distribution of marital assets. The Master afforded Wife a credit for monies paid on the Scion in return for Husband's waiver of his claims to the marital portion of her South Whitehall Township Thrift Savings Plan and the South Whitehall Township 457 Deferred Compensation Plan. He reasoned that the net amount due to Husband from the rollovers of these accounts would likely be less than the total amount paid by Wife on the car loan considering interest and principal as well as the balance due. In formulating the equitable distribution of the assets and debts of the parties, the Master also considered that Husband had received a lump sum payment of $60,000.00, which was marital property. Husband had not accounted for this money although the Master found that Husband paid toward

12

the credit card debt. The Master generously applied these unaccounted for monies to offset any increase in the aforementioned thrift accounts.

Husband argues that the Court erred in failing to award post-divorce alimony to him. In particular, he asserts that the Court relied upon the Divorce Master's recommendation that Wife had fulfilled her duty of support to Husband and that there were no specific findings as to what that duty was or which items would be considered a credit toward any duty of support. Husband submits that, in consideration of the alimony factors, including but not limited to the length of the marriage, the parties' earnings and earning capacities, and Husband's mental and physical disabilities, and in consideration of any amounts that could be properly credited to Wife, he should be entitled to post-divorce alimony. Wife insists that there is no error by the Court in denying Husband post-divorce alimony. Without reiterating the well reasoned recommendations of the Master, this Court finds that the Master, without committing an error of law or an abuse of discretion, objectively measured the circumstances of the parties and the case to effectuate economic justice. Although the evidence presented to the Master did not determine with precision the estate of the marriage, the well seasoned Divorce Master was able to recognize the finite perimeters of this marriage and achieved a just determination of their property rights.

Husband contends that the Trial Court erred in terminating his APL while the divorce was still pending and economic issues remained unresolved. He notes that the Trial Court's decision in this regard is not reflected in the Court's Order dated October 31, 2012, partially approving the Master's recommendations, even though APL had been terminated at the time of the Order. Wife contends that there was no error in terminating Husband's APL. This Court acknowledges the Court's oversight in the October 31, 2012 order as contrary to its prior order

13

terminating support. The Master recommended that if Husband appeals the recommendation, additional credits to Wife for potential 'overpayment' of support should be revisited. This Court has adopted the reasoning of the Master in his report and affirms the position that Wife has fulfilled her obligation to Husband in supporting him nearly thirteen years after separation. This Court did such a review and concluded that Wife had satisfied her financial obligation to Husband.

Husband declares that the Trial Court erred in failing to order reimbursement to Husband, upon Husband's motion, once it became apparent Wife's partially marital defined benefit pension was in pay status following her retirement, particularly in light of the Trial Court's termination of APL. He notes that the Master recommended that APL continue until he received payments from the defined benefit pension plan. He insists that the Trial Court erred in denying his request that the retirement benefits awarded to him from Wife's defined benefit pension plan be paid into a special needs trust for him, so that he could retain eligibility for disability-based medical and related benefits. Wife argues that the Court did not commit an error in denying Husband's request that the retirement benefits award to him from her defined benefit pension plan be paid into a special needs trust.

At the July 2012 hearing, counsel for Husband argued that the Master had stated that Husband was to receive payments until the point that he receives payments under the QDRO. He attempted to delay the preparation of the QDRO by not paying his portion of preparation fee. He further delayed the entry of the QDRO on that he refused to sign it. Then, over six months after the Master filed his report, which took over two years to file, Husband raised the issue of a trust. Whether Husband's delay in the entering of the divorce decree was intentional or not, he

14

delayed the decree. The record from the Support Hearing Officer thru the Master's hearing would support that he had intentionally delayed the decree. In delaying the decree, he benefitted financially at the expense to Wife. Wife has long satisfied her financial obligation to Husband.

Husband states that the Trial Court erred in failing to award all legal fees and costs incurred by him in this matter, in consideration of the extreme income disparity between the parties and the Trial Court's termination of Husband's APL. Wife denies that the Court committed error in failing to award all legal fees and costs incurred by Husband. Husband presented a fee agreement and a ledger sheet to the Master. (Defendant's Exhibit No. 14 and 15). Despite the recommendation of the Master, this Court did order Wife to pay $2000.00 to Husband in December 2012 toward his legal fees.

BY THE COURT:

_Michele A. Varricchio_ (signature)

_____

**Michele A. Varricchio, J.**

15