## Shuster, Appellant, *v.* Shuster.

Argued December 4, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent).

*Stanley Frank,* with him *Jonathan Wheeler,* and *Frank & Margolis,* for appellant.

*William T. Steerman,* for appellee.

OPINION BY HOFFMAN, J., April 3, 1974:

The question in this appeal is to what extent should a court consider the existence of "other assets" where

a reduction in income is alleged to justify a modification of a support order.

On September 8, 1970, the appellant, Bella Shuster, filed a petition for support with the Court of Common Pleas of Philadelphia, Family Division, alleging in part, that she and her husband, after nearly 40 years of marriage, and because of domestic difficulties, had irreconcilably separated. On November 2, 1970, a "temporary" order was entered by the Honorable Judge Vito F. CANUSO, in favor of the appellant in the amount of $200.00 per week.[1]

On July 12, 1971, the appellee, Herman Shuster, filed a petition for reduction of the original support order. Successive hearings were held on October 13, 1971, October 12, 1972, and October 26-27, 1972. After the final hearing, Judge CANUSO entered the following order, which reads, in part: "Temporary Order of 11/2/70

---

[1] Said order was entered after testimony concerning the appellant's financial requirements and the assets, income and capabilities of the appellee was taken. The following summary taken from the notes of testimony from the support hearing demonstrates the extent of appellee's "ability to pay":

| | | |
|---|---|---|
| Weekly income from pawnshop and other concerns .... | | $600 net |
| Weekly draw from pawnshop .......... | $158 net | |
| Income from business (annual) ....... | 15,000 | |
| Income from stocks and bonds ........ | 14,000 | |
| Accounts Receivable (loans) .......... | 40,000 | |
| Mortgage from Sale of Loan Co. ....... | 20,000 | |
| Value of assets (business and personal) ............. | | $570,000 |
| Stocks and Bonds ................... | 350,000 | |
| Inventory (on hand) ................. | 40,000 | |
| Personal jewelry .................... | 20,000 | |
| Real Estate (est.) ................... | 100,000 | |
| Miscellaneous ...................... | 60,000 | |

In the discussion that follows it is evident that, while appellant's stated income may have lowered, the value of his assets, particularly from the standpoint, of what may be conveniently called, "income potential factor", has remained substantially the same. Hence, the reinstatement of the original support order.

reduced to $150.00 per week from said date and further reduced to $100.00 per week as of this date."

This is an appeal from that order.

In his petition for reduction, appellee alleged a marked "change of circumstances", and attributed the mounting arrearages to the decrease in his ability to pay.[2] It can generally be said that one who wishes to have an existing support order reduced has the burden of proving by competent evidence sufficient facts which show a material and substantial change in circumstances. In the case of *Commonwealth ex rel. Long v. Long*, 181 Pa. Superior Ct. 41, 43-44, 121 A. 2d 888 (1956), this Court held: "After the original unappealed from order has been made, it may be reduced only upon a showing made in good faith that the circumstances existing when the prior order was made have materially and substantially changed."

In the hearings before Judge CANUSO, the appellee offered the following in support of his alleged "change of circumstances":

(1) Edward Fishman, his business accountant, introduced the appellee's IRS tax returns, and testified that appellee's *net* income had decreased from $30,945.00 in 1969, to $19,210.00 in 1970, to $15,302.00 in 1970;[3]

(2) Appellee testified that he was liquidating his pawnshop and that his real estate holdings, because of poor location, had significantly depreciated in value;[4]

---

[2] At the time of the October 13, 1971 hearing, appellee was $1700 in arrears.

[3] On cross-examination, appellant's attorney elicited testimony that Mr. Fishman had no knowledge of appellee's nonbusiness holdings and prepared the tax returns only on information made available to him from the appellee. Furthermore, Mr. Fishman admitted that appellee's substantial gross income was reduced to adjusted income by extensive depreciation and business *loss* deductions.

[4] Both qualitative statements made by the appellee with respect to the value of real estate and his pawnbroking business were un-

(3) Appellee further stated that the drop in income from his business was associated with a suspension of pledges to businessmen, reducing interest income therefrom, from $20,770.00 to $5,813.00.[5]

On cross-examination, the appellee further denied the purchase of additional stocks and bonds, the establishment of savings accounts in foreign countries, or the deposit of large sums of money in any other venture.

Subsequently, the appellant produced a number of witnesses and records to refute the appellee's claims. First, it was shown that, while appellee's income from business loans and his business may have decreased by $10-15,000.00, his other investments had, contrary to appellee's testimony, significantly increased. The appellant called two representatives of stock brokerage houses who produced records that indicated that appellee's stock and bond purchases had increased his net holdings from approximately $350,000 in June, 1970 to $471,000 in May, 1971. A large number of these purchases involved tax-exempt municipal and government securities. Furthermore, a statement was introduced showing the purchase of State of Israel Bonds in the amount of $10,000.00.

The appellee was recalled at one of the later hearings and admitted that the 19 real estate properties that he had owned at the time of the original order were still in his possession, and rental income amounted to $14,465.00 a year. He further admitted that he owned approximately $30,000.00 worth of personal jewelry

supported by concrete evidence, and there was no testimony or proof that the status of those concerns had significantly changed during the year between the original support order and the petition to reduce.

[5] While interest income diminished, this income was attributed to a choice by the appellee not to engage in continuous money-lending ventures. This decrease in taxable income did not prevent the appellee from investing in a large number of nontaxable income properties (see discussion, *infra*).

and had sold $4,000 worth of his wife's jewelry in 1970. In addition, the parties' son, Dr. Daniel Shuster, who had lived with the appellee, testified that he observed his father taking large sums of money on his various trips to Canada and Israel, and that on his return, the money was "gone".[6] Appellee admitted taking expensive trips to Italy, Israel and the Carribean.

The appellee correctly states the proposition that, on review of a support order, our duty is limited to determine whether there is evidence to support the order and whether there has been an abuse of discretion. *Commonwealth ex rel. Fishman v. Fishman*, 213 Pa. Superior Ct. 342, 247 A. 2d 810 (1968). While a modification of an order may be made at any time where a "change of circumstances" is demonstrated to the satisfaction of the hearing judge, *Commonwealth ex rel. Soloff v. Soloff*, 212 Pa. Superior Ct. 136, 240 A. 2d 562 (1968); and, while an order should never *punish* the other party while benefiting the person being supported, we believe the lower court placed too great an emphasis on the appellee's "earnings" as testified to and stated in his tax returns. The court has the power and the duty to look beyond the actual earnings of the parties, and may consider "his earning power . . . *and the nature and extent of his property and other financial resources . . . .*" (Emphasis added). *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A. 2d 181 (1967); *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa. Superior Ct. 247, 311 A. 2d 701 (1973).

While appellee's tax returns reflect a decrease in *net* income from approximately $30,000 to $15,000, which if

---

[6] While Dr. Shuster's testimony may not have been sufficient to establish the contention that appellee had foreign bank accounts containing large sums of money, the testimony certainly could be considered in demonstrating the appellee's frequent trips and his control over large sums of money belying appellee's insistence that he was suffering financial hardship.

taken alone would have justified the reduction by one-half of the support order, the extent of appellee's total financial worth, not only remained undiminished, but during the period marking the "change in circumstances", actually improved somewhat. We believe the court erred in reducing the appellee's order on the basis of reduced *income*, and that the "attendant circumstances" supported appellant's prayer for enforcement of the original order and an order for the immediate payment of arrearages.

Order of November 1, 1972 is reversed and vacated, the original order of support in the amount of $200 per week is reinstated, and the appellee is ordered to pay the arrearages in the amount of $25.00 per week.