473 A.2d 597

**Donna J. CURTIS, Appellant,**

v.

**William H. CURTIS.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1983.

Filed March 2, 1984.

Gordon Mair, West Chester, for appellant.

John J. Snyder, King of Prussia, for appellee.

Before MONTEMURO, WATKINS and CERCONE, JJ.

MONTEMURO, Judge:

This is an appeal from an order overruling a master's recommendation that appellee pay $150 per month for the support of a child in college.

The case was commenced in July of 1981 by appellant daughter's filing of a RURESA[1] action in Westmoreland County, against her father, the appellee, William H. Curtis. At the suggestion of the Westmoreland County Court, and by agreement of the parties, the hearing on this matter was held in Chester County, where appellee resides. It took place before a master on December 2, 1981, and was transcribed.[2] Appellee and his former wife, appellant's mother, were the only two witnesses who testified at the hearing. The following is a summary of what was presented at that hearing.

1. "Revised Uniform Reciprocal Enforcement of Support Act." 42 Pa.C.S.A. § 6741 *et seq.*

2. Chester County has adopted Pa.R.C.P. 1910.12, as opposed to Pa.R. C.P. 1910.11.

Appellant, Donna J. Curtis, born March 15, 1963, is appellee's daughter by his former wife, who has now remarried and is Mrs. Katherine Conti. A second child, Jane Curtis, was also born of the marriage on April 3, 1965. Katherine Conti and appellee were divorced in March of 1973. Prior to that, in 1972, a support order was entered, obligating appellee to pay $225 per month for appellant, and an equal amount for her sister. The order did not specify when these payments were to terminate. Appellee faithfully paid this amount until June of 1981, when he ceased making appellant's share of the payments.

On September 2, 1981, appellant enrolled at Gannon University in Erie, Pennsylvania. Between her graduation from high school and enrollment at Gannon, she was employed at Wendy's Restaurant and earned approximately $1300.00. She is not employed during the college semester. Appellant's first semester bill at Gannon was $2430. Appellant paid this with a $2445 loan she had received. Aside from Gannon's bill, appellant has had additional expenses of $437 during the semester, which have been paid partially with summer earnings, and partially with money provided by her mother and stepfather. (R. 14a).

Appellee, who has also remarried, is an attorney employed by the Bell Telephone Company. His assets include a home in which there is approximately $20,000 in equity: a $2400 savings account; $3500 in bonds; and, $3000 worth of AT & T stock. All assets just described are owned jointly with appellee's present wife. Appellee also has approximately $238,000 worth of life insurance, some whole life and some term. He testified that he received a $2400 tax refund in 1981, and has a history of receiving tax refunds each year (R. 54a). Appellee's income, net of taxes, is $2679.66 per month.

As stated above, appellee is obligated to pay $225 per month for the support of appellant's sister, Jane. Appellee also, as of the date of the hearing, is obligated by court order to pay $1500 for support of his present wife and two minor children of that marriage. He and his present wife

became estranged in May of 1981. At the time of the hearing, appellee was living with a friend and paying no rent or utilities. He testified that he was going to move out at the end of the month. He estimated that after moving, his non-discretionary expenses would be $1309 per month, discretionary expenses were estimated at $242 per month.

Appellant's mother is currently unemployed and at home caring for the three year old child of her present marriage. Appellant's mother and her husband own a house worth approximately $90,000. They also have joint savings accounts, stocks, and bonds, of which appellant's mother did not know the value.

After considering all of the above, the master recommended that appellee be required to pay $150 per month to appellant, basing the recommendation on her conclusion that it would not be an undue hardship for him to do so. Appellee filed exceptions to the master's adjudication. Oral argument on these exceptions were heard by the Honorable Charles B. Smith, who rejected the master's recommendation, and issued an order dismissing appellant's complaint for support. Specifically, the court below excluded from consideration of appellee's ability to pay, all assets owned jointly with his second wife, stating, "These assets are subject to equitable distribution and defendant's ultimate interest in these assets is uncertain." (Slip opinion, p. 3). The court below accepted as reasonable appellee's estimation of expenses, both discretionary and non-discretionary. It subtracted these expenses and appellee's support obligations from a net pay of $2679.66, yielding a negative cash flow of $597.79 per month. It reasoned that to order appellee to support appellant in such circumstances constituted undue hardship.

On appeal, appellant makes three arguments: (1) that the court below erred in concluding that it would constitute undue hardship to order appellee to contribute to the support of appellant—specific errors in calculating appellee's ability to pay are alleged; (2) that Pa.R.C.P. 1910.12 is unconstitutional; and, (3) that the court below erred in

failing to conclude that appellee had a contractual obligation to support appellant throughout college. We shall consider these issues *seriatim.*

The legal obligation of a parent to support a child in college, absent a specific agreement to do so, was first set forth in *Commonwealth ex rel. Ulmer v. Sommerville*, 200 Pa.Super. 640, 190 A.2d 182 (1963), and has undergone little refinement since that time.

We believe that the law of this Commonwealth requires a father, under certain circumstances, to support a child while attending college and that this appeal brings squarely before us the question of what circumstances will justify the entry of a support order in favor of such child. In the first place, before the father should be required by court order to support a child in college, the child should be able and willing to successfully pursue his course of studies. *Commonwealth ex rel. Grossman v. Grossman, supra*, 188 Pa.Super. 236, 241, 146 A.2d 315 (1958). In the second place, the father should have sufficient estate, earning capacity or income to enable him to pay the order without undue hardship.

The duty of a parent to provide a college education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself. It is a natural law that a parent should spare no personal sacrifice to feed and protect his offspring. Therefore, beyond the barest necessities, a father should be required to sacrifice personal comfort in order to provide the necessities of a child too young to support himself. The same exacting requirement should not be demanded of a father to provide a college education for a child able to support himself.

We are not suggesting that a father should be required to support a child in college only when the father's income or estate is such that he could do so without making *any* personal sacrifices. Most parents who send a child to college sacrifice to do so. No mathematical rule can be formulated to determine how extensive the hard-

ship upon a father must be before it will excuse him from supporting a child in college. It must be a matter of judgment in a field where the judgments of sincere and advised men differ materially. However, we have no difficulty in concluding that under all the circumstances of this case the order of the court below imposes an undue hardship upon the defendant. (Emphasis in original).

*Ulmer v. Sommerville, supra,* 200 Pa.Superior Ct. at 643–44, 190 A.2d at 184.

As there is no dispute regarding appellant's willingness or ability to do college work, the key question here is whether appellee father has sufficient estate, earning capacity, or income, to enable him to pay an order without undue hardship. The court below determined that he did not. Appellant is arguing on appeal that the court below incorrectly determined appellee's assets, income, and expenses, hence, it unjustly concluded that appellee was unable to pay any support.

The principles applicable to determining a parent's ability to pay support were thoroughly discussed in *Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 429 A.2d 665 (1981). These principles, in relevant part, are set forth below:

It is well established in evaluating a parent's support obligation the lower courts should consider the parent's income (or potential earning power if there is a disparity between that figure and actual income) and the full nature and extent of the parent's property interests and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid,* 251 Pa.Super. 103, 380 A.2d 398 (1977); and see *Commonwealth ex rel. Gitman v. Gitman,* 428 Pa. 387, 237 A.2d 181 (1967); *Shuster v. Shuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974); *Shaffer v. Shaffer,* 175 Pa.Super. 100, 103 A.2d 430 (1954). The parent's stock holdings, and other investments, at their market value, are among the factors the lower court should consider. *Commonwealth ex rel. ReDavid v. ReDavid,*

*supra.* And see *Commonwealth ex rel. Gitman v. Gitman, supra; Commonwealth ex rel. Gutzeit v. Gutzeit,* 200 Pa.Super. 401, 189 A.2d 324 (1963). Quite naturally, the court should consider a parent's income, from whatever source; included in income should be monies received from the rental of real estate, but that 'income' must reflect actual available financial resources and not the oft-time fictional financial picture which develops as the result of depreciation deductions taken against rental income as permitted by the federal income tax laws. *Commonwealth ex rel. ReDavid v. ReDavid, supra; Commonwealth v. Turnblacer,* 183 Pa.Super. 41, 128 A.2d 177 (1956); *Commonwealth ex rel. Rankin v. Rankin,* 170 Pa.Super. 570, 87 A.2d 799 (1952). Otherwise put, 'cash flow' ought to be considered and not federally taxed income. See *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer,* 266 Pa.Super. 301, 310 A.2d 672 (1973). The court must also consider the parent's interest in jointly held assets, but it may not consider the entire value of joint property as the parent's. *Commonwealth ex rel. Gitman v. Gitman, supra.*

*Commonwealth ex rel. Hagerty v. Eyster, supra,* 286 Pa.Superior Ct. at 568–69, 429 A.2d at 668–69.

Armed with the principles outlined above, we now turn to the lower court's determinations. Appellant alleges numerous errors in calculation of income, expenses, and assets. We shall discuss below only those allegations which we find to have merit.

First, we find that the court below erred in its calculation of appellee's monthly net income, in that Social Security deductions were miscalculated. Appellee's bi-monthly paycheck stubs show a deduction of $139.93 per pay period. However, the maximum annual 1981 employee Social Security obligation was $1975.05 [3] Thus, these deductions cease once this maximum is reached. The trial court's calculations make no allowance for this, and in effect allows a yearly deduction of $3358.32, an excess of $1383.27 over the

3. We take judicial notice of this pursuant to 42 Pa.C.S.A. § 5327.

actual figure. If appellee's monthly net income had been properly computed, taking this into account, it would be approximately $2794, not $2679.

■ The court below erred in its calculation of income in yet another respect. Appellee testified that in 1981 he received a $2400 Federal Income Tax refund, and that he has a history of receiving tax refunds each year. The court below, however, ignores this factor in its calculations. An individual is free to claim fewer allowances than he is entitled to on his W-4 federal income tax form. Doing so, consequently, increases the amount withheld from each paycheck, and decreases the net. However, any excess amounts withheld are returned to the taxpayer at the end of the year as a refund. We could not permit an individual to overpay his taxes all year, and then exclude the amount of his overpayment from calculation of that individual's income. To do so works an injustice, especially here, where appellee testified that he has a history of receiving refunds.

The trial court's errors, outlined above, would not necessarily require a reversal or remand. Adjusting appellee's income to account for each of these does not alter the fact that appellee has a negative monthly cash-flow. It is because of a third, and most significant error, that we must reverse and remand.

■ This error is the trial court's summary refusal to consider appellee's interest in all property jointly owned with his second wife. *Commonwealth ex rel. Hagerty v. Eyster, supra; Commonwealth ex rel. Gitman v. Gitman, supra.* Specifically included in this property is approximately $20,000 equity in a home, $2400 in savings accounts, $3500 in bonds, and stock valued at approximately $3000. As stated earlier, the trial court reasoned that "these assets are subject to equitable distribution and defendant's ultimate interest in these assets is uncertain." (Slip opinion, p. 3). Yet, appellee's own testimony, which was uncontradicted, was that there had not been a divorce action, or a claim for distribution, filed by either himself or his second wife

(R. 47a). Aside from the question of whether an equitable distribution proceeding would render these assets completely unavailable—a we emphasize that this is not the question we are faced with here—the court below abused its discretion in concluding, on the basis of this record, that a divorce was imminent and inevitable.

Unfortunately, the record is devoid of relevant evidence regarding these jointly owned assets, such as whether, and what, dividends or interest is paid, etc. Therefore, we must remand to the court below for a determination of appellee's ability to pay, taking into account appellee's interest in the assets described above.

The remaining two issues raised by appellant shall be disposed of briefly.

Appellant's second argument, that Pa.R.C.P. 1910.12 is unconstitutional, has been waived, as it is being raised for the first time on appeal. Pa.R.A.P. 302(a); *Policino v. Ehrlich*, 478 Pa. 5, 385 A.2d 968 (1978); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Appellant's third argument has also been waived. Although we admit that the master's findings on the question of whether there was an agreement to support appellant throughout college are not as clear as they could be; one thing is certain, and that is that the master's recommendation is not based on the existence of an agreement, it is based on a finding of lack of undue hardship. If appellant was dissatisfied with the master's failure to find a contractual agreement, she should have filed exceptions.[4] It is clear that appellant was content to prevail solely on a theory of lack of undue hardship until the lower court's

4. Pa.R.C.P. 1910.12(e) reads as follows:
   (e) Within ten days after the conclusion of the hearing, *any party* may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. Each exceptions shall set forth a separate objection precisely and without discussion. Matters, not covered by exceptions are deemed waived unless, prior to entry of the final order, leave is granted to file exceptions raising those matters. (Emphasis added).

adverse determination. She then sought to reassert the contractual agreement on appeal. This is improper. Pa.R. C.P. 1910.12(e).

Order reversed and case remanded for proceedings consistent with this opinion. Jurisdiction is not retained by this court.