510 A.2d 827

**Carl J. LEONARD, Appellant,**

v.

**Susan LEONARD, for and on Behalf of Lynn LEONARD, Appellee.**

Superior Court of Pennsylvania.

Argued April 1, 1986.

Filed June 20, 1986.

Gifford Cappellini, Wilkes-Barre, for appellant.

Christopher P. Decker, Wilkes-Barre, for appellee.

Before McEWEN, OLSZEWSKI and KELLY, JJ.

OLSZEWSKI, Judge:

Appellant challenges the award entered as the result of the master's recommendation providing reimbursement for the past college expenses of the parties' daughter, Lynn, and contribution for further expenses incurred. The issues concern two areas: the settlement agreement signed by Lynn's parents, and the financial support imposed upon appellant in connection with Lynn's college education. Because we find no error in the award determination, we affirm the lower court's order.

Susan and Carl Leonard were married in 1974. Thereafter, Carl adopted Joseph and Lynn, Susan's two children by a previous marriage. Carl filed for divorce in 1983; soon after, the parties entered into a settlement agreement. In 1984, he left the marital home but continues to pay the

mortgage and taxes on the property.[1]  Carl is presently on the furloughed list with the D & H Railroad and collects $125 per week unemployment compensation, but occasionally works on a "called as needed" basis.  Susan is employed as a legal secretary with a salary of approximately $14,800 annual gross.  Both children reside with Susan.

Lynn Leonard is a 19 year old sophomore at Ursinus College.[2]  She financed her freshman year through school loans, grants, scholarships and help from her mother.  It is undisputed that her father contributed no financial assistance outside of birthday and graduation gifts.  It is also undisputed that absent enforcement of the lower court's support award, appellant would not contribute to Lynn's sophomore year expenses and these would be satisfied once again through loans, grants, scholarships and help from her mother.

Axiomatic to our discussion is paragraph 7 of the settlement agreement, captioned *College Education.*  Substantively, Carl agreed to pay the undergraduate educational loans for both Joseph and Lynn subject to certain limitations.  First, his total share could not exceed $2,500 per year per child.  Next, this obligation cannot be for more than four years of education.  Third, Carl's share will be determined in accordance with the child's grade point average (GPA).  The higher the average, the greater the payments assumed by appellant.  Analogous to this provision is the restriction that Carl will have no repayment obligation should the G.P.A. fall below 2.0.  In this instance, the child will be responsible for the full amount of the loan.

The entire settlement agreement is presently being challenged by Susan in an equity action before the Luzerne County Court of Common Pleas.[3]  As such, the validity of

---

1.  There was some reference in the record and master's report that appellant is once again living in the marital home.  This, however, has no bearing on the issues at hand.

2.  The master's hearing was on May 25, 1985.  At that time Lynn was eighteen and had finished her freshman year at Ursinus.  Also, at that time she had every intention of continuing her education.

3.  Equity action filed to No. 4–E of 1985.

this provision does not concern us. With regard to this contract, it has long been the rule in this jurisdiction that parents cannot bargain away the right of support for their children despite the validity and legality of the contract. *Oman v. Oman*, 333 Pa.Super. 356, 482 A.2d 606 (1984); *Commonwealth ex rel. Snively v. Snively*, 206 Pa.Super. 278, 212 A.2d 905 (1965); *Commonwealth ex rel. Rossi v. Rossi*, 161 Pa.Super. 86, 53 A.2d 887 (1947). Notwithstanding this rule, however, we note with great interest that paragraph 7 of the settlement agreement concerns the *prospective* payments of loans. We find that the issue *sub judice*, *current* contributions for college expenses, is independent of any future obligation.

The next question for our review is the propriety of the award order. Our Court is required to defer to the court below and will not interfere with its determination absent a clear abuse of discretion. *Commonwealth ex rel. Cochran v. Cochran*, 339 Pa.Super. 602, 489 A.2d 804 (1985); *Commonwealth ex rel. Scanlon v. Scanlon*, 311 Pa.Super. 32, 457 A.2d 98 (1983); *Commonwealth ex rel. Grossman v. Grossman*, 188 Pa.Super. 236, 146 A.2d 315 (1958). We must decide if the order can be supported on any grounds and whether there was sufficient evidence on the record to do so. *Commonwealth ex rel. Leider v. Leider*, 335 Pa.Super. 249, 484 A.2d 117 (1984). At all times, we must keep in mind that a finding of abuse of discretion is not lightly made. *Commonwealth ex rel. Leider v. Leider, supra.* On the other hand, the discretion to be exercised has been described as a "wide discretion." *Boni v. Boni*, 302 Pa.Super. 102, 448 A.2d 547 (1982).

The obligation of support does not fall on the shoulders of just one parent. *See Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974). Since the adoption of the Equal Rights Amendment to the Pennsylvania Constitution, support has become a shared responsibility between both mother and father. *Conway v. Dana, supra; Commonwealth ex rel. Buonocore v. Buonocore*, 235 Pa.Super. 66, 340 A.2d 579 (1975). This does not mean, however, that each parent

must contribute equal amounts. *See* Momjian, *Family Law and the Pennsylvania Equal Rights Amendment,* 25 Vill. L.R. 677 (1979–1980). The monetary support paid by each is to be discharged in accordance with their capacity and ability. *Conway v. Dana, supra.*

■ That support obligations include a college education is not new. *Commonwealth ex rel. Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963), quoted the Court in *Commonwealth v. Gilmore,* 97 Pa.Superior Ct. 303 (1929), when stating "(t)he law, apart from statute has come to recognize that paternal duty involves, in addition to provision for mere physical needs, such instruction and education as may be necessary to fit the child reasonably to support itself and to be an element of strength, rather than one of weakness, in the social fabric of the state." The *Ulmer v. Sommerville* Court went on to hold that child support could, under certain circumstances,[4] be extended to include a college education. *See also, Curtis v. Curtis,* 326 Pa.Super. 40, 473 A.2d 597 (1984). This Court realizes that *Ulmer v. Sommerville* qualified its holding in the following manner:

> The duty of a parent to provide a college education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself. It is a natural law that a parent spare no personal sacrifice to feed and protect his offspring. Therefore, beyond the barest necessities, a father should be required to sacrifice personal comfort in order to provide the necessities of a child too young to support himself. The same exacting requirement should not be demanded of a father to provide a college education for a child able to support himself.

> We are not suggesting that a father should be required to support a child in college only when the father's income or estate is such that he could do so without making any personal sacrifices. Most parents who send a child to college sacrifice to do so. No mathematical rule

---

**4.** These circumstances are discussed *infra.*

can be formulated to determine how extensive the hardship upon a father must be before it will excuse him from supporting a child in college. It must be a matter of judgment in a field where the judgments of sincere and advised men differ materially.

*Commonwealth ex rel. Ulmer v. Sommerville, supra,* 200 Pa.Super. at 644, 190 A.2d at 184.

■ There are two major considerations that must be addressed before awarding a child college financial assistance. First, the child must maintain grades sufficient to remain in college and must be willing to continue. *Commonwealth ex rel. Grossman v. Grossman,* 188 Pa.Super. 236, 146 A.2d 315 (1958). Second, the parent from whom support is sought must have sufficient estate, earning capacity or income to enable him to pay the order without undue hardship. *Commonwealth ex rel. Ulmer v. Sommerville, supra; Curtis v. Curtis, supra.*

The second requirement has been the subject of some discussion in previous instances. In conjunction with that consideration the principles have been thoroughly set forth in *Commonwealth ex rel. Hagerty v. Eyster,* 286 Pa.Super. 562, 429 A.2d 665 (1981).

It is well established in evaluating a parent's support obligation the lower courts should consider the parent's income (or potential earning power if there is a disparity between that figure and actual income) and the full nature and extent of the parent's property interests and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid,* 251 Pa.Super. 103, 380 A.2d 398 (1977); and *see Commonwealth ex rel. Gitman v. Gitman,* 428 Pa. 387, 237 A.2d 181 (1967); *Shuster v. Shuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974); *Shaffer v. Shaffer,* 175 Pa.Super. 100, 103 A.2d 430 (1954). The parent's stock holdings, and other investments, at their market value, are among the factors the lower court should consider. *Commonwealth ex rel. ReDavid v. ReDavid, supra.* And *see Commonwealth ex rel. Gitman v. Gitman, supra; Commonwealth ex rel. Gutzeit v. Gutzeit,* 200 Pa.Super. 401,

189 A.2d 324 (1963). Quite naturally, the court should consider a parent's income, from whatever source; included in income should be monies received from the rental of real estate, but that "income" must reflect actual available financial resources and not the oft time fictional financial picture which develops as the result of depreciation deductions taken against rental income as permitted by the federal income tax laws. *Commonwealth ex rel. ReDavid v. ReDavid, supra; Commonwealth v. Turnblacer,* 183 Pa.Super. 41, 128 A.2d 177 (1956); *Commonwealth ex rel. Rankin v. Rankin,* 170 Pa.Super. 570, 87 A.2d 799 (1952). Otherwise put, "cash flow" ought to be considered and not federally taxed income. *See Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer,* 266 Pa.Super. 301, 310 A.2d 672 (1973). The court must also consider the parent's interest in jointly held assets, but it may not consider the entire value of joint property as the parent's. *Commonwealth ex rel. Gitman v. Gitman, supra.*

*Commonwealth ex rel. Hagerty v. Eyster, supra,* 286 Pa.Super. at 568–569, 429 A.2d at 668–669.

■ Our next step is to apply the above principles to the pertinent facts of the case before us. The record easily satisfies the first element. Lynn is a full-time biology major with a first semester average of 80.68 and a second semester average of 84.[5] (R.R.182). In addition, she has received a merit scholarship to be applied towards her tuition. (Master's Report, p. 18). It is also clear that not only did she intend to return to Ursinus but she also planned on taking a course over the summer. We therefore have no doubt that part one is met.

After a careful review, we find that the second element is also sufficiently satisfied. Carl admitted several detrimental factors: that contributing to Lynn's college education was an undue hardship *only* because all assets were fro-

5. This is based on a 100% scale.

zen;[6] that he volunteered to be placed on furlough because he did not want to commute to the D & H Railroad's new location;[7] the determination of the extent of his assets; and that he paid no support for Lynn.

■ We agree with the master and the lower court that appellant could be making over $30,000 should he choose to do so and that it is the earning capacity that we must consider. *Commonwealth ex rel. Hagerty v. Eyster, supra.* In addition, appellant receives income from six rental properties, five of them multi-family dwellings. It is immaterial that his tax forms show a loss on those properties as a result of tax breaks and depreciation allowances. *Commonwealth ex rel. Hagerty v. Eyster, supra.* Furthermore, appellant's list of additional income is extensive. He receives significant sums of interest income as well as tax refunds. He has several IRA accounts and also has access to a money market account and a mutual fund account, all of which he did not know the value. Clearly, appellant has the means to help his daughter through college.

■ Last is appellant's argument that Susan must also contribute to Lynn's college education. Appellant specifically disagrees with the following statement taken from the lower court: "There is no need to force the mother to recognize her responsibilities to her child." (page 3 of lower court opinion). This statement, however, was taken out of context. The court observed that Lynn did not bring an action against her mother since her mother has been providing financial assistance to her. Therefore, since her mother has *already* recognized her responsibility of support, the court need not force her to do so.

Once again, in light of the record, we agree with the lower court. Susan has continually aided her daughter's

6. The assets of the parties were frozen in December 1984 by order of the court. A subsequent court order in May 1985 before the master's hearing lifted this freeze, thereby making the assets available.

7. There was considerable testimony as to appellant's reasons for not making the approximately one and one-half hour drive. It is not necessary for us to go into a great discussion of those reasons.

quest for a college education. She contributed basic spending money for laundry, books, lab fees and parties. In addition, she assumed the expense of transportation from West Wyoming to Ursinus College and back. As such, it is error for appellant to argue that Susan does not support Lynn.

Order affirmed.

KELLY, J., files concurring statement.

KELLY, Judge, concurring:

I concur, and would add to the majority's analysis as follows. The appellant argued that the award was excessive in that the Court failed to consider that his daughter was receiving financial assistance in the form of grants and loans which significantly reduced her real financial need.

In *Miller v. Miller*, 353 Pa.Super. 194, 197, 509 A.2d 402, 404 (1986) this Court stated:

> It is well established that a parent who has sufficient assets and earning capability to furnish support without undue hardship for a child's college education is charged with a duty to do so. *Sutliff v. Sutliff,* 339 Pa.Super. 523, 489 A.2d 764 (1985). It is concomitantly true that independent resources of a college age child may be considered in determining the child's need for support. *Id., citing Devergilius v. Devergilius,* 329 Pa.Super. 434, 478 A.2d 866 (1984). *See also Commonwealth ex rel Platt v. Platt,* 227 Pa.Super. 423, 323 A.2d 29 (1974). That is not to say that a child must always contribute as much as possible to the payment of his or her educational expenses. *Clearly, if a parent can meet the support needs of a college-age child with ease, a court is free to impose a complete obligation.*

353 Pa.Superior Ct. at 197–98, 509 A.2d at 404. (Emphasis added).

Likewise, in *Commonwealth ex rel. Hanerkam v. Hanerkam,* 221 Pa.Super. 182, 289 A.2d 742 (1972), this Court stated:

The potential availability to students of loans, grants, or self-help by part-time or summer employment does not negate the duty of the parent but does merit cognizance thereof *when a serious question of undue hardship is presented.*

221 Pa.Superior Ct. at 186, 289 A.2d at 744. (Emphasis added).

However, in the instant case, the appellant has failed to establish any undue hardship caused by the support order. To the contrary, the appellant has ample assets and earning capacity to shoulder the minimal burden imposed.[1]

It should be emphasized that parents bear the primary financial responsibility for their children's reasonable college expenses. College grants and student loans are secondary sources of financial aid, which are intended to assist those students whose parents cannot afford to bear the full cost of their children's college expenses.

Moreover, governmental and private sources of financial aid are not unlimited. Real need of those dependant on financial aid already greatly exceeds the available resources. Consequently, this Court must not allow a parent, who can afford to meet his financial responsibilities, to shift his burden to secondary sources of financial aid.[2] To do so would reward the appellant's failure to meet his legal obligations and would, in the aggregate, deny truly needy students access to limited resources.

1. It should be noted that it was incumbent upon the appellant to establish "undue hardship." Though I have no doubt as to the adequacy of his financial resources, I would add that his failure to provide adequate disclosure regarding the value of significant financial assets precludes a finding of undue hardship in any case.

2. The Master indicated that the appellant's failure to support his daughter resulted in the daughter having to accumulate three thousand five hundred dollars ($3,500.00) in debt each year to pursue her education. If there is undue hardship in this case it is that imposed on the daughter by her father, the appellant.

The Master also indicated that she was only receiving college grants because of the destitute situation her father, the appellant, has placed her in. (Master's Report and Recommendation at 24).