# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01311-SCT

*WILLIAM DAVID SALIBA*

*v.*

*KATIE ROSE McCLENDON SALIBA*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/1998 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | RAY T. PRICE |
| ATTORNEY FOR APPELLEE: | ERIK M. LOWREY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 02/24/2000 |
| MOTION FOR REHEARING FILED: | 3/9/2000; denied 4/20/2000 |
| MANDATE ISSUED: | 4/27/2000 |

# BEFORE PRATHER, C.J., SMITH AND COBB, JJ.

# COBB, JUSTICE, FOR THE COURT:

## STATEMENT OF THE CASE

¶1. Katie Rose McClendon Saliba (Kit) and William David Saliba (David) entered a property settlement agreement in conjunction with their divorce granted on April 2, 1996. The Agreement specifically reserved the determination of the amount each parent would pay toward their children's college education expenses until the children were ready to attend college.

¶2. When daughter Katie Rose was a senior year in high school, Kit filed a motion in the Forrest County Chancery Court seeking determination as to who would be responsible for paying for Katie Rose's college education. Kit requested that the court enter an order requiring each parent to pay one-half of Katie Rose's college expenses at whichever college Katie Rose might choose.

¶3. In his Response to Motion and Counter-Petition for Clarification, David contended that Katie had more than sufficient funds of her own which were intended to be used to pay for college, and therefore neither party should be required by the court to pay her college expenses. Alternatively, David argued that Kit has a greater ability to pay and therefore his part should be limited to one-half of tuition, books, and room and board at a state-supported (Mississippi) institution until Katie Rose reaches the age of twenty-one or becomes otherwise emancipated.

¶4. In Kit's Response to Affirmative Matter and Answer to Counter-Petition for Clarification, she acknowledged Katie Rose's substantial assets but denied they were intended for educational purposes. Kit

contended that she and David should split college expenses and that Katie should not be limited to an in-state[1] school.

¶5. At the June 18, 1998, hearing on this matter the court waived production of Kit's financial declaration and ordered that her tax returns be produced under seal.[2] The court denied production of the children's tax records. In determining that each parent should pay one-half of Katie Rose's college expenses at the college of her choice, the court found as follows:

> An in-depth discussion of Katie Rose's financial needs of college in relation to the ability of the parties to pay for such needs only raises emotional considerations of who will assume the responsibility of higher education. . . . The Court will not attempt to divide the parties with such a discussion; rather, in keeping with the willingness of the Plaintiff to defray one-half of the college expense, will assign the responsibility equally between them without regard to the small financial sacrifice involved so that each parent will pay one-half of the college expenses of tuition, books, subsistence, sorority, and car insurance not covered by scholarship[[3]] for Katie Rose Saliba to attend the school of her choice. The advantage of the partial scholarship outweighs the consideration of requiring her attendance at a state-supported institution, the necessity of books, subsistence, sorority and car insurance being present either place.

¶6. On July 16, 1998, David filed a timely Notice of Appeal to this Court. After due consideration, we affirm the judgment of the trial court.

## STATEMENT OF FACTS

¶7. David and Kit Saliba were divorced by judgment of the chancery court of Forrest County on April 2, 1996. As part of the divorce, granted on grounds of irreconcilable differences, the parties entered into a property settlement agreement which was incorporated into the judgment of divorce. David agreed to pay $1,250 per month in child support for their two children, Katie Rose and Mary Paige, who were ages fifteen and twelve at the time of the divorce. David and Kit reserved the issue of college expenses for the children, including in the property settlement agreement the following provision:

> The issue of college education is intentionally left out of this Agreement with the understanding of both parties that this matter shall be reserved and determined by the Court at the appropriate time when the minor children of the parties attain the age to attend college. A stipulation regarding the value of the minor children's present Uniform Gift to Minor Act accounts has been executed by the parties' attorneys and shall be deemed the account balance as of the date of the statements which are attached to the stipulation.

¶8. In February 1998, when Katie Rose, the elder daughter was a senior in high school, Kit sought a determination by the Forrest County Chancery Court as to who would be responsible for payment of Katie Rose's college expenses. In her motion filed with the court, Kit asked that the court require each parent to pay one-half of all college expenses, including but not limited to room, board, tuition, travel expenses to and from school, books, sorority expenses and any other expenses required for Katie Rose to attain a degree at any university which she chooses to attend. David disagreed with this proposal and suggested to the court that Katie Rose had ample funds in her own right, given to her by her McClendon grandparents, and that all college expenses should be paid out of Katie Rose's assets. In the alternative, David suggested that his liability to pay should be limited to no more than one-half the cost of attending a state-supported institution

in Mississippi.

¶9. No contested evidentiary hearing was actually held in this matter, but the parties and their respective counsel appeared before the chancellor and certain stipulations were made on the record. In response to a statement from David regarding his reason for requesting detailed information regarding Katie Rose's investment accounts, the chancellor stated "it comes down to a legal question of whether you're obligated to do it, notwithstanding that [Katie Rose's separate estate] . . . and that's what the court will decide it on, then. Okay?" After consideration of briefs submitted by the parties, the chancellor ordered that each parent pay one-half of Katie Rose's college expenses not covered by her scholarships, at the school of her choice.

## ISSUES

¶10. The three issues presented by David for resolution by this Court are as follows:

**I. THE CHANCELLOR ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER THE CHILD'S OWN ASSETS AND THE FACT THAT SHE COULD PAY FOR HER OWN COLLEGE EDUCATION FROM SUCH ASSETS**

**II. EVEN IF THE CHANCELLOR WAS CORRECT IN DETERMINING THAT THE MINOR'S FUNDS WERE NOT ACCESSIBLE, HIS DECISION IN ALLOCATING THE BURDEN OF COLLEGE EXPENSES EQUALLY BETWEEN THE TWO PARTIES IN THIS CASE BOTH LEGAL ERROR AND MANIFEST ERROR BASED ON THE FACTS**

**III. THE CHANCERY COURT ERRED IN ORDERING PAYMENT OF EXPENSES FOR OUT-OF STATE TUITION, SORORITY AND CAR INSURANCE**

## Standard of Review

¶11. The findings of fact of the chancery court, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. ***Nichols v. Tedder***, 547 So. 2d 766, 781 (Miss. 1989). This Court always reviews a chancellor's findings of fact, but we do not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. ***Bowers Window & Door Co., v. Dearman***, 549 So. 2d 1309, 1312-13 (Miss. 1989). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied. ***Sarver v. Sarver***, 687 So. 2d 749, 753 (Miss.1997). For questions of law, our standard of review is de novo. ***Harrison County v. City of Gulfport***, 557 So. 2d 780, 784 (Miss. 1990).

## ANALYSIS

**I. THE CHANCELLOR ERRED AS A MATTER OF LAW IN FAILING TO CONSIDER THE CHILD'S OWN ASSETS AND THE FACT THAT SHE COULD PAY FOR HER OWN COLLEGE EDUCATION FROM SUCH ASSETS**

¶12. Because Katie Rose's separate assets were invested in a Uniform Gift to Minors Act account, there was discussion of not only whether she should pay for her own college expenses but also whether she could pay for them. The chancellor noted in his judgment that a letter from A. G. Edwards & Sons had been

furnished the court and that it stated that Katie Rose "is not eligible to withdraw assets from her account without the signature of the custodian (her mother, Kit) until she reaches the age of 21." However, the chancellor went on to say " [t]hat prospect discounted, the issue before the court is whether the parents of Katie Rose should be required to fund her college expenses."

¶13. Clearly, under the Mississippi Uniform Transfers to Minors Act (Miss. Code Ann. §§ 91-20-1 *et seq.* (1994) ), as well as its predecessor, the Mississippi Uniform Gifts to Minors Act (Miss. Code Ann. §§ 91-19-1 *et seq*.(1994)). Katie Rose may reach the assets of her account through her mother, Kit, who is the custodian of the accounts.[4] As custodian, Kit has access to the funds for Katie Rose's use, and is able to withdraw them at will on behalf of Katie Rose for educational expenses or for any other purpose which Kit, as custodian, deems wise and necessary. Additionally, should Katie Rose decide that paying for all or part of her own college education would be a worthy use of her assets, she would be free to do so, with the signature of Kit, as custodian. However, the chancellor did not have to reach these points, because he correctly determined that Katie Rose should not be forced to pay her college expenses out of her own estate.

¶14. There is scant Mississippi case law addressing the issue of who is responsible for payment of a child's college expenses and none which specifically addresses the allocation of such expenses where both parents, as well as the college-bound child, have extraordinarily substantial separate estates. There is no Mississippi precedent which would prevent a court from requiring a wealthy child of wealthy parents to contribute toward, or fully pay, such educational expenses. Conversely, we have no law which would require it.

¶15. In *Pass v. Pass***,** 238 Miss. 449, 118 So. 2d 769 ( 1960), this Court first addressed the issue of whether the Court had the legal right to compel a parent to provide funds for a college education for a minor child, finding that:

> [I]f the children of today who are to be the citizens of tomorrow are to take their rightful place in a complex order of society and government...it must be recognized that **their parents** owe them the duty, to the extent of their financial capacity, to provide for them the training and education which will be of such benefit to them in the discharge of the responsibilities of citizenship....We see no good reason why this duty should not extend to a college education. . . .

238 Miss. at 458, 118 So.2d at 773 (emphasis added). In *Pass*, the trial court increased the father's support obligation "in order to aid the daughter [] in acquiring a college education." *Id.* at 454, 118 So.2d at 771. On appeal, the Court affirmed the chancellor's decision, considering the testimony of the child's mother, "that she was financially unable to provide the funds necessary for her daughter's college education, but the appellant [the father] is." *Id.* at 453, 118 So.2d at 770. Quoting from what was then Section 2743 of the Mississippi Code of 1942[5] (and what is now part of the first paragraph of Miss. Code Ann.§ 93-5-23 (Supp.1999)), the Court recited the trial court's authority, as follows:

> When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, *having regard to the circumstances of the parties* and the nature of the case*, as may seem equitable and just,* make all orders touching the care, custody and maintenance of the children of the marriage...and make from time to time such new decrees as the case may require. *However, where proof shows that both parents have separate incomes or estates, the court may require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each.*

238 Miss. at 452-53,118 So. 2d at 770 (emphasis added).

¶16. Looking beyond Mississippi, to the jurisprudence of other states relating to the payment of college expenses of children of wealthy parents, we find a number of cases on point. In *Sutliff v. Sutliff*, 528 A.2d 1318 (Pa. 1987), the Pennsylvania Supreme Court analyzed issues very similar to those in the case sub judice, That Court, considering whether funds given to minors under the Uniform Gifts to Minors Act (UGMA) should be considered by the court in fashioning a support order and whether they may be used to fulfill a parent's support obligation, held that:

> [A] parent's obligation to support minor children is independent of the minor's assets. UMGA funds may not be used to fulfill the parent's support obligation where the parent has sufficient means to discharge it himself. Upon determining that the parent has sufficient funds to reasonably support the minor without seriously depriving himself or other persons to whom he has a similar obligation, the court should not thereafter consider the minor's funds in setting the support obligation.

*Id.* at 1320. In *Sutliff,* the father owned and operated a successful car dealership. His net worth was approximately $3,000,000, and he earned in excess of $130,000 per year. The mother was an emergency room physician. The father and his parents gave substantial assets to the couple's children under the UGMA. The father and a business associate of his were the custodians of the children's UGMA accounts. The trial court relied on statutory language which gave the custodian broad discretion in expending UGMA funds and did not limit the amount of custodial funds that the custodians could use to discharge the father's support obligation.

¶17. On appeal, the Pennsylvania Supreme Court held in *Sutliff* that:

> When he can "reasonably" do so, the father is obliged to provide support for his minor children regardless of the UGMA property. Whether it is reasonable to require a father to supply all or part of the support his children require without regard to their own means is a threshold question. It involves balancing the parent's income, assets, earning power and needs against the children's needs. If the court determines that the parent can reasonably provide for their needs at an appropriate level, that obligation is paramount and the children's means should not be considered.

*Id.* at 1324. However, the Pennsylvania Supreme Court also acknowledged in *Sutliff* "a possible exception for children seeking higher education" stating that:

> [C]hildren's education may be financed from sources other than the parent. (citing *Devergilius v. DeVergilius,* 478 A.2d 866 (1984); *Commonwealth ex rel. Schlesinger v. Schlesinger*, 331 A.2d 694 (1974); *Commonwealth ex rel Platt v. Platt*, 323 A.2d 29 (1974), and *Doelp v. Doelp*, 281 A.2d 721 (1971). "There is no reason why this rule should not apply to UGMA funds. It is fair and consistent with the policies underlying both child support and the UGMA. Therefore a court may more freely consider UGMA assets when apportioning financial responsibility for a child's education. However, there was no finding here that husband's assets are lacking or that provision of a college education would impose any hardship on him. Indeed, the present record belies any such problem.

*Sutliff* at 1325. Under this analysis, UGMA property, like other assets, can be used for the children's needs if the father could not or would not fulfill his support obligation. The parent's obligation remains

paramount. *Id.* at 1324.

¶18. The facts in the case before us and the facts in *Sutliff* are strikingly similar. The parents in both cases are wealthy. The children in both instances have substantial UGMA assets of their own. Therefore, to consider Katie Rose's assets in fashioning David's obligation concerning her college education would be to ignore the jurisprudence of another jurisdiction which has determined that the obligation of a father such as David is "paramount".

¶19. Just as the *Sutliff* court found that the husband's assets were not lacking, similarly, the chancellor in the case sub judice found that David's assets were not lacking. There is evidence in the record that David is well able to pay for one-half of his daughter's college education expenses. The lower court correctly determined that David could reasonably contribute one-half of Katie Rose's college expenses without financial hardship.[(6)] Therefore, the trial court was correct in not considering Katie Rose's assets in fashioning its judgment. This issue is without merit.

> **II. EVEN IF THE CHANCELLOR WAS CORRECT IN DETERMINING THAT THE MINOR'S FUNDS WERE NOT ACCESSIBLE, HIS DECISION IN ALLOCATING THE BURDEN OF COLLEGE EXPENSES EQUALLY BETWEEN THE TWO PARTIES IN THIS CASE WAS BOTH LEGAL ERROR AND MANIFEST ERROR BASED ON THE FACTS**

¶20. David asserts that, pursuant to Miss. Code Ann. §§ 93-5-23 & 93-11-65 (Supp. 1999), Katie Rose's college expenses should not have been apportioned equally because Kit's wealth was triple that of his own. This assertion has no basis in law. The present case stands in stark contrast to the vast majority of Mississippi child support cases; here both parents have far more than ample funds to provide for their daughter's college education without diminution of their usual and customary lifestyle.

¶21. It is settled that a chancery court may adjudge that one or both parents provide the means for college education for their children. *Rankin v. Bobo*, 410 So.2d 1326, 1328 (Miss. 1982) (citing *Pass*). When a father's financial ability is ample to provide a college education and the child shows an aptitutde for such, the court may in its discretion, after hearing, require the father to provide such education. The parental duty to send a child to college is not absolute, however, but is dependent upon the proof and circumstances of each case. *Rankin* at 1328 (citing *Hambrick v. Prestwood,* 382 So. 2d 474 (Miss. 1980)).

¶22. Miss. Code Ann. § 93-5-23 provides: "[w]here proof shows that both parents have separate interests or estates the court **may** require that each parent contribute to the support and maintenance of the children of the marriage in proportion to the relative financial ability of each." (emphasis added). The permissive language of the statute indicates that the chancellor does not merely apply a mathematical proportionality formula. It is also important to note that the statute contemplates the "relative financial ability" of each, rather than the "relative net worth" or some other measure. In the present case, Kit and David each have more than ample financial ability to pay for their daughter's college education. The chancellor applied the guidelines of the statute, after clearly considering the financial positions of the parties, and he acted in the best interest of the child. In ordering that both parties split equally the college expenses remaining after scholarships, the chancellor's determination produced a fair and equitable result. In sum, there is simply no evidence to support David's contention that the amount ordered by the chancellor is inequitable and unjust. We find this issue to be without merit.

## III. THE CHANCERY COURT ERRED IN ORDERING PAYMENT OF EXPENSES FOR OUT-OF-STATE TUITION, SORORITY AND CAR INSURANCE

¶23. The chancellor specifically included expenses for tuition at the school of her choice, books, subsistence, sorority expenses and car insurance when he ordered that David pay one-half of Katie Rose's college expenses, after scholarships. David takes exception to the inclusion of out-of-state tuition, sorority expenses and car insurance in the "one half of the college expense" which he has been ordered to pay.

¶24. There is no case in which this Court has delineated what costs are properly included in the term "college expenses." Specific costs mentioned in cases involving the payment of college expenses vary significantly. Each case is dependent upon the proof and circumstances it presents. Any recitation that purports to cover all possibilities would more likely than not create more problems than answers. Thus we address only the specific costs which have been challenged.

### Out-of-State Tuition

¶25. This Court, in ***Wray v. Langston***, 380 So. 2d 1262, 1264 (Miss. 1980), stated that "[t]he duty of a parent to provide a college education for his or her child contemplates support ***in addition to tuition and college costs***, without which, provision for college education would be in vain." (emphasis added). This statement gives little clarification, because what would render an education "in vain" for one child would not do so for another. For a student in one particular curriculum, a computer may be a necessity without which the student's education would be in vain. Yet for a student in another, expenses such as lab fees may be more vital than a computer. A professional aviation student could have fees not directly related to tuition but without which he and his career would be grounded.

¶26. There is no Mississippi law which gives direct guidance as to whether the out-of state tuition required for Katie Rose to attend Georgia Tech should or should not be an expense for which David is responsible. He points out that he and Kit received excellent educations in Mississippi, at a state-supported institution of higher learning, and that Katie Rose could do the same. In ***Clark v. Clark***, No. 98-CA-00404-SCT, 1999 WL 1000707 at *1 (Miss., Nov. 4, 1999) the chancellor ordered payment of tuition, books, housing, meals, and living expenses equivalent to the cost of attending a "state-supported university in Mississippi." The issue in ***Clark***, however, was not "in-state" vs. "out-of-state" tuition, but rather the "in-state" tuition was used for the sake of specificity and limitation. In ***Clark***, the mother was financially unable to pay any expenses of college, as she worked as an "executive housekeeper" and her gross salary was only $1,080 per month. The father was better able to pay the children's college expenses and was ordered to do so.

¶27. Looking further for instruction on this issue, we turn again to the words of this Court in ***Wray***: "[w]e are of the opinion that a child, if the father is financially able, is entitled to attend college ***in accord with her family standards." Wray***, at 1262 (Emphasis added). Katie Rose's family has prioritized education as a family standard, nurtured her abilities, encouraged her academic achievement , and therein she has excelled. Both Kit and David have expressed to the court great pride in their daughter and her accomplishments. Katie Rose's interest in studying engineering led her to the decision to pursue a degree in this field at Georgia Tech. This school awarded her a four -year Presidential scholarship. "The quality and quantity of necessities for which a parent is liable has been gauged in American and English Jurisprudence from time immemorial by the parents' station in life. A rich man, well able to pay, might very well be held liable for a college education of an extended and expensive sort. . . . Voluntary parental sacrifices to enable children to attend college are very common. The appellant's station in life however, is such that the

obligation should not be placed upon him by law against his will." *Golay v. Golay*, 210 P.2d 1022,1023 (Wash. 1949) (quoting *Esteb v. Esteb*, 244 P. 264 (Wash. 1926)). Unlike the father in *Golay*, David is a man of considerable means. Therefore, he is able and should be required to contribute to the college education at an institution of his daughter's choice, commensurate with her parents' station in life. It is not unreasonable to consider attendance at Georgia Tech to be within this family's station in life. We find no error in the chancellor's judgment regarding out-of-state tuition.

## Car Insurance

¶28. Furthermore, it is not unreasonable for the court to require David to pay for one-half of the car insurance, as Kit promised to furnish the car for their daughter as a graduation gift. The court properly found that David failed to prove that such expense would create a hardship. Whether Kit chooses to provide Katie Rose with a Lexus or a Beetle, half of the insurance obligation for either car would not appear to be out of line with what a person of David's means could afford. Whether David would agree with the continuance of the family standards is not a consideration before this Court. Whether he was in agreement to the family's standard of living during the marriage is also not an issue before this Court. The fact remains that these are the family standards which did exist throughout Katie Rose's youth, and those to which she is accustomed.

¶29. "All too often what parents would have done willingly had their relationship not deteriorated must, after the fact, be coerced for the benefit of their children." *Chesonis*, 538 A.2d at 1379 (Cirillo, P.J. concurring) . Emotionalism and bitterness displace reason, and it is indeed noble for us to step between warring parents to rescue their children's dreams." *Id.* Here, requiring David to pay for half of the car insurance does not mandate the extravagant. Nor would it open the flood gates whereby courts would have to satisfy the every whim of ex-wives , as David alludes. Here, the Court accepts these facts: This child will have a car. The car will be in keeping with the family standards. Where there is a car, there is a need for car insurance. "Here the parents are able, and no more need be said." *Sutliff* at 1326. For the foregoing reasons, and because the chancellor's decision is not inconsistent with the jurisprudence found in *Wray*, we hold that the chancellor's decision requiring David to pay for one-half of the car insurance did not exceed his authority.

## Sorority

¶30. David's brief states that "Apparently, Kit contends that Katie's college education would be in vain if not conducted out of state and without being able to drive her own luxury automobile to sorority soirees." While this may or may not be what Kit is contending, it is not the issue before this Court. The issue here is the same as was characterized by the chancellor, that is whether David, notwithstanding Katie Rose's own assets, is legally obligated for one-half of her college education expenses, including out-of-state tuition, car insurance and sorority. David believes that it would be against public policy for the Court to uphold the judgment that he pay half of his daughter's sorority expenses. We must decide if legally requiring a parent to pay this expense would be to mandate the extravagant.

¶31. Addressing this final sub-issue of sorority, neither party cites case law on point from any jurisdiction. While there is scant case law defining college education expenses, there is even less guidance regarding whether an education must include sorority participation, and if so, at whose expense. It was clearly stated in *Golay* that where the father was not a "rich man" and could barely afford his own living expenses, he was not liable for sorority expenses of his daughter. *Golay*, at 1023. In the present case, both parents are very wealthy and sorority expenses should not have any significant negative impact on their net worth. Florida

jurisprudence provides guidance concerning the fashioning of support where parents have the "good fortune" of wealth:

> The child of a multimillionaire would be entitled to share in that standard of living-for example to attend private school or to participate in *expensive extracurricular activities*- and would accordingly be entitled to a greater award of child support to provide for these items, even though such items would not be ordered in a different case.

*Finley v. Scott,* 687 So.2d 338, quoting *Miller v. Schou*, 616 So.2d 436,438 (Fla. 1993) (emphasis added & footnote omitted).

¶32. It was not abuse of discretion for the chancellor to determine that David should pay one-half of the cost of sorority membership for Katie Rose. Certainly it appears that involvement in such an expensive "extracurricular college activity" would be in keeping with Katie Rose's family's life-style. David has not proven that it would be a hardship for him to contribute to Katie Rose's college sorority expenses. Because no Mississippi case law indicates that to do so is error, we find that it was not error for the chancellor to order David to pay for half of Katie Rose's sorority expenses.

## CONCLUSION

¶33. The chancellor was not manifestly wrong, nor did he apply any erroneous legal standard regarding the issues which David assigned as error. The judgment of the Forrest County Chancery Court is affirmed.

¶34. **AFFIRMED.**

**PRATHER, C.J., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SULLIVAN AND PITTMAN, P.JJ., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶35. I respectfully dissent from the majority opinion for two reasons. First, when a couple seeks a no-fault divorce, they are permitted by statute, Miss. Code Ann. § 93-5-2(2) (1994), to sign an agreement settling all property and custody matters. This settlement agreement is made in anticipation of the divorce judgment which may incorporate the agreement if the Chancellor approves. The statute states that "such judgment may be modified as other judgments for divorce," and our cases recognize that issues of child custody, support, etc. may be adjusted as circumstances warrant. The majority fails to perceive that a settlement agreement may always be modified. Indeed, in this case, the parties agreed at the time of their divorce to settle the matter of college tuition at a later date. Thus, there was nothing in the property agreement which bound the parents to pay for college let alone an expensive private school outside of this state. Our colleges and universities provide adequate education for a child to attend. The benchmark for support should be what it costs for a public education in this state not for a university in another state or foreign country.

¶36. Second, until recently, Iowa, by statute, mandated that a parent pay no more than one-third the cost of in-state tuition (the child was expected to contribute a portion of his own college expenses). Iowa Code §598.21(5A) (Supp. 1997); *In re Marriage of Murphy*, 592 N.W.2d 681, 684 (Iowa 1999). See also *Webb v. Fox*, 978 S.W.2d 16, 21 (Mo. Ct. App. 1998) (court calculated child's college expenses based

on in-state tuition less one-third for the child to provide on his own).

¶37. The majority's opinion gives this Court's imprimatur to a parent's having to provide not only private school (or out-of-state) tuition but sorority dues as well. What if the daughter had insisted on four years at the Sorbonne in Paris or at Cambridge? Would a parent have to pay for this? A professor at the University of Mississippi participates in summer classes taught at Cambridge, England. Is a parent required to pay for this?

¶38. We have previously held that parents should be required to provide funds for college where the child is qualified and shows an aptitude for same and the parents have the means to pay for college. *Wray v. Langston***,** 380 So.2d 1262, 1264 (Miss. 1980); *Pass v. Pass*, 238 Miss. 449, 118 So.2d 769 (Miss. 1960). We have never before required a parent to pay sorority dues or costs for out-of-state tuition. If a parent wants to pay for a private university or for extras he or she may do so, but for this Court to require a parent to bear these expenses sets a standard that most parents cannot, and should not have to, meet. We have used the criteria of reasonable expenses but, in this case, it appears that the child has the means to pay for the extras she desires and there is no reason she should not be expected to contribute. *See **In re Marriage of Eaton***, 894 P.2d 56 (Colo. Ct. App. 1995) (court erred in not considering assets of child where child had an account funded by grandparents); *In re Marriage of Booth,* 258 N.E.2d 834, 836-37 (Ill. App. Ct.1970) ("Parents are often called upon to make sacrifices to obtain a college education for their children. But the children must also cooperate to lessen the burden to their parents in whatever way they can"); *In re Marriage of Steele*, 502 N.W.2d 18 (Iowa Ct. App. 1993) (court was correct to order child to contribute to his own education where he had substantial assets); *Weitzman v. Weitzman***,** 549 A.2d 888 (N.J. Super. Ct. App. Div. 1988).

¶39. Assuming the parent is in a position to pay for college, he or she should be required to pay no more than he or she would pay if the child attended a public university in Mississippi which is a reasonable expense. To hold otherwise implies that our state schools are somehow inferior. Furthermore, there is no reason why a child with substantial assets of her own should not be expected to contribute to her education.

¶40. Finally, our decisions requiring divorced parents to pay for their child's college education gives greater rights to the children of divorced parents than those whose parents remain together. A child of parents who have never divorced has no right under our law to force his parents to pay for college either in-state or out-of-state. There can be no justification for this disparate treatment.

¶41. Therefore, I dissent.

1. Katie Rose was accepted to MIT, Georgia Tech, Wellesley, Auburn, Smith and Duke, as well as Mississippi State, Ole Miss and Millsaps, and her ultimate choice was Georgia Tech.

2. The financial records which were filed under seal reveal that each parent and each child in the Saliba family owned extraordinarily substantial assets, so there was no question that ample funds were available to pay for all college expenses, regardless of who was required to make the payment.

3. Katie was awarded a scholarship of $10,000 per year for four years at Georgia Tech and a one-time $3,400 Junior Miss scholarship which was applicable at any college.

4. It is unclear from the record which act was in effect at the time gifts were made to Katie Rose. However, that does not create an issue here because both acts have very similar language, providing that "[a]

custodian may deliver or pay to the minor or expend for the minor's benefit so much of the custodial property as the custodian considers advisable for the use and benefit of the minor...." Miss. Code Ann. § 91-20-29 (1) (1994); *see also* Miss. Code Ann. § 91-19-11(1)(1994) (repealed 1995).

5. Except for politically correct amendments which make the statute gender-neutral, the quoted portion of Section 2743, cited as the authority under which the trial court in *Pass* rendered its decree, is virtually identical to the first portion of the present statute, Miss. Code Ann. § 93-5-23(Supp.1999).

6. This standard is in keeping with another Pennsylvania case, in which the Superior Court held that "consideration must be given to the financial situation and capacity of both parent and child in determining whether or not to order educational support" and "any ordered support should be payable by the parent without imposing an undue hardship upon that parent." *Chesonis v. Chesonis*, 538 A.2d 1376,1378 (Pa. Super. Ct. 1988), citing *Leonard v. Leonard*, 510 A.2d 827 (Pa. Super. Ct.1986).